[No. 18059.  *En Banc.*  April 22, 1924.]

FRED HUMPHREYS, *Appellant,* v. THE STATE OF WASH-
INGTON, *Respondent.*[1]

CRIMINAL LAW (376)—JUDGMENT—REVIEW BY TRIAL COURT—WRIT
OF CORAM NOBIS—WHEN ISSUES.  A judgment of conviction cannot
be set aside on petition for a writ of *coram nobis* on affidavits show-
ing only the fact of newly discovered evidence on the merits, tried
out and decided by the judgment, notwithstanding such evidence
conclusively establishes that the judgment was wrong (PEMBERTON,
J., dissenting).

Appeal from a judgment of the superior court for
Whitman county, Miller, J., entered March 17, 1922,
denying a petition for a writ of error *coram nobis* to
set aside a judgment of conviction of larceny.  Af-
firmed.

*Pickrell & Stotler* and *Hanna, Miller & Hanna,* for
appellant.

*W. L. LaFollette, Jr.,* and *S. R. Clegg,* for respond-
ent.

PARKER, J.—This proceeding was commenced in the
superior court for Whitman county by Fred Hum-
phreys, by filing therein his petition for a writ of *coram
nobis,* praying that a verdict of a jury and a judgment
thereon rendered in that court convicting him of grand
larceny be vacated and set aside upon the ground that,
after the expiration of the statutory period for his
moving for a new trial, he discovered evidence which,
if presented upon his trial, would have prevented the
finding and rendering of that verdict and judgment.
The state responded to the petition both by a demurrer
and answer.  Thereafter affidavits were filed in behalf
of Humphreys in support of the facts alleged in his

[1]Reported in 224 Pac. 937.

petition, and controverting affidavits were filed in behalf of the state. Upon the record so made, the court denied the prayer of the petition, resting such denial upon the ground that the petition did not state legal cause for relief as prayed for. No request was made for leave to amend the petition, and the affidavits in support and contravention thereof presented no additional cause for relief. In other words, all of such affidavits were but evidence in support or in contradiction of the facts alleged in the petition. From this disposition of the matter in the superior court, Humphreys has appealed to this court.

The facts, as alleged in the petition, may be summarized as follows: On August 30, 1920, the prosecuting attorney filed an information in the superior court for Whitman county charging appellant Humphreys with the crime of grand larceny, in that he "on or about the 25th day of August, A. D., 1920, in the county of Whitman, state of Washington, then and there being, did then and there wilfully, unlawfully and feloniously take, steal, and carry away personal property belonging to R. B. Terrell, to wit: ten sacks of wheat of the value of $4.50 per sack and of the total value of $45." Thereafter appellant was brought to trial in that court, resulting in the jury finding him guilty as charged. Thereafter, within the time prescribed by statute, appellant filed his motion for a new trial, which motion was supported by a showing of alleged newly discovered evidence. Thereafter this motion was by the court overruled. Thereafter judgment was rendered against appellant, sentencing him to a term in the penitentiary. Thereafter appellant gave notice of appeal from that judgment to this court. Thereafter this court affirmed the judgment so rendered by the superior court. *State v. Humphreys*, 118 Wash.

472, 203 Pac. 965. Following the recital of these proceedings, appellant's petition alleges that an error of fact was committed in the rendering and affirming of his conviction,

"in this, that the verdict by the jury and judgment of the court were based upon evidence introduced by the state in said Cause No. 13991, to the effect or tending to show that petitioner had, on·or about the 25th day of August, 1920, stolen from R. B. Terrell 10 sacks of wheat of the value of $4.50 per sack, or of the total value of $45, when in truth and in fact petitioner did not, on or about said 25th day of August, 1920, or at any other time, or at all, steal any wheat, the property of R. B. Terrell, or of any other person or at all; that petitioner did not know, at the time of said trial, who had stolen or taken the 10 sacks of wheat belonging to said R. B. Terrell, nor did any one connected with the defense of said action, nor at the time of his sentence was he in the possession of information tending to connect other parties with the taking thereof, but since said time petitioner has ascertained whom the parties were who took said wheat, and herewith attaches to this petition copies of affidavits of parties connected with the taking of said 10 sacks of wheat, which said affidavits are hereby made a part of this petition; that petitioner did not have anything to do with the taking or theft of said wheat and at all times asserted his innocence and made the best defense he could to said charge, and to his knowledge was not negligent in any way in securing, or attempting to secure, evidence to present to the jury to establish his lack of guilt, and petitioner did not come into possession of the information contained in the attached affidavits until too late to present same to the court and jury; that there was not any evidence introduced upon the trial of Cause No. 13991 touching upon the matters set forth in the affidavits hereto attached, and said cause was heard and determined upon the evidence produced before the jury and the affidavits in support of petitioner's motion for a new trial, to which reference is hereby made, and the question involving the guilt of any person other than petitioner

of the offense charged was not involved in or deter-mined in said cause."

The affidavits made part of appellant's petition, omitting signatures and jurat, read as follows:

"Clifton Wilson, Joe Humphreys and Joe Wilson, being first duly sworn, each for himself and not one for the other, says: That they took the ten sacks of wheat from the R. B. Terrell setting on the 25" day of August 1920. That Fred Humphreys was tried and convicted for taking in the superior court at Colfax, Washington, on the 6" & 7" day of December, 1920. That Fred Humphreys had nothing to do with the tak-ing of the wheat, was not with us and knew nothing about it. That we loaded the wheat into an automobile and hauled it down and left it where found in the cow shed on Fred Humphrey's place, and the wheat was taken without the knowledge or consent of Fred Hum-phreys."

The writ of *coram nobis,* and all proceedings in the nature of that ancient writ, having in view the setting aside of a final judgment of a court of competent juris-diction, are very much limited in their efficacy in juris-dictions such as ours having statutory provisions regu-lating procedure granting new trials. This is especially true where the statutes, such as ours, provide for and regulate the granting of new trials upon the ground of newly discovered evidence. Our statute, with ref-erence to the granting of new trials in criminal cases, reads in part as follows:

"An application for a new trial must be made before judgment, and may be granted for the following causes materially affecting a substantial right of the defend-ant:—

"3. Newly discovered evidence material for the defendant, which he could not have discovered with reasonable diligence, and produced at the trial;" Rem. Comp. Stat., § 2181 [P. C. § 9341].

So if this application be nothing more than the seeking of the setting aside of the judgment of conviction rendered against appellant, upon the ground of newly discovered evidence touching the merits of the case in which that judgment was rendered, it manifestly comes too late, since it comes long after the rendering of that judgment.

In the text of Freeman on Judgments, § 94, we read with reference to this subject:

"This writ does not lie to correct any error in the judgment of the court, nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end to litigation. . . . The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which, without any fault or negligence of the party, was not presented to the court."

These observations by that learned author have been cited and quoted with approval by many of the courts of last resort in this country. Our problem, it seems, may be stated in these two questions: (1) Do the facts here relied upon by appellant go any farther than to contradict and seek to again put in issue the ultimate fact, to wit, appellant's guilt; tried, passed upon and affirmed by the judgment sought to be set aside; and (2) do the facts here relied upon by appellant disclose some existing fact at the time of the rendering of the judgment which, if then before the court, would have prevented the rendering of the judgment? We here put aside the question of Humphreys' want of knowledge, within the statutory time for his moving for a new trial, of the facts he now relies upon for relief, and assume for argument's sake that he did not then

have knowledge of such facts, apart from the fact of his guilt or innocence, as to which, of course, he did have knowledge.

Our own decisions come very near, if not quite, answering these questions in the negative, at least the former. In *State ex rel. Davis v. Superior Court*, 15 Wash. 339, 46 Pac. 399, there was drawn in question a conviction of the crime of rape and an attempt to have such conviction set aside by a proceeding of this nature. The conviction apparently was rested upon the testimony of the prosecuting witness upon whom the assault was made. The conviction was sought to be set aside by the showing of an admission made by the prosecuting witness when it was too late to be availed of as new evidence in support of a motion for a new trial, that she had testified falsely upon the trial as to certain material matters, but for which testimony the accused would have been acquitted. It was there squarely held that such a showing did not warrant granting relief to the accused by a proceeding of this nature. In *State v. Armstrong*, 41 Wash. 601, 84 Pac. 584, there was presented an effort to set aside a conviction of murder upon a showing that one of the jurors had falsely testified upon his *voir dire* examination to facts showing him to be a fair juror, when, as a matter of fact, he was very much prejudiced against the accused, as it was claimed to be discovered by all but conclusive evidence coming to light too late to be used upon a motion for a new trial. The relief prayed for was denied in substance upon the theory that it would be but to re-examine and re-try the very issue that was tried and determined upon the juror's *voir dire* examination. In so holding it was said:

"Under our statutes and practice, it may be possible that occasion might arise where a writ *coram nobis* could be properly granted; but such occasions must be

very rare, as provision is made to afford relief by other means in most cases. It has been held, and we think it to be the general rule, that the writ will not be issued to correct an error involving a question that has been adjudicated. 5 Ency. Plead. & Prac., 29, 34. In this case the question of the qualification of Lowry as a juryman was adjudicated. He was questioned and cross-questioned upon his *voir dire* as to his qualifications, and was duly accepted as a juryman.''

*Wilson v. State,* 46 Wash. 416, 90 Pac. 257, was a proceeding of this nature. It was there sought to set aside a judgment of conviction wherein the accused was tried and convicted with another of stealing cattle. The defense was ownership of the cattle. The accused having testified to such ownership on the trial, he, by a proceeding of this nature, sought to show that he was mistaken in his testimony as to the identity and ownership of the cattle, being so induced to testify by statements made to him by the one accused with him; and that, too late to be used in his motion for a new trial, he discovered such mistake in his testimony through the confession of guilt of the one who was tried and convicted with him. It was held, as in the former cases above noticed, that no relief could be granted through a proceeding of this nature; again manifestly upon the theory that to set aside the judgment and award a new trial upon such a showing would be to do so merely upon newly discovered evidence touching the very issue, to wit, the guilt or innocence of the accused, which was determined by the judgment sought to be set aside; Judge Dunbar, speaking for the court, observing in part: ''The writ was never intended to take the place of a new trial.''

Now it is at once apparent that appellant's allegation that he did not commit the crime for which he was adjudged guilty cannot be considered here because that is the very ultimate question of fact put in issue and determined by the verdict and judgment rendered

against him. It is equally clear that the statements of Clifton Wilson, Joe Humphreys and Joe Wilson, made in their affidavits, "that Fred Humphreys had nothing to do with the taking of the wheat," and that "the wheat was taken without the knowledge or consent of Fred Humphreys," cannot be considered here because that is also, in its last analysis, the very ultimate question of fact put in issue and determined by the verdict and judgment sought to be set aside. In other words, all of these statements of facts which these affiants would testify to upon a new trial are nothing more than new evidence touching only the very merits of what was decided by the verdict and judgment.

The statements of Clifton Wilson, Joe Humphreys and Joe Wilson admitting their own guilt are only more or less persuasive of the truth of their statements that Humphreys had nothing to do with the taking of the wheat. Manifestly, this would be only new evidence touching the merits of the ultimate issue tried and determined by the verdict and judgment sought to be set aside. In *Howard v. State,* 58 Ark. 229, 24 S. W. 8, it was held that proof brought forward in a proceeding of this nature that one other than the convicted person had committed the crime, was nothing more than newly discovered evidence; and in *Asbell v. State,* 62 Kan. 209, 61 Pac. 690, in a proceeding of this nature, offered proof of facts developed by a post mortem examination that the crime could not have been committed by the one convicted therefor, was nothing more than newly discovered evidence, and was not available in support of a claimed remedy of this nature.

The industry of counsel for appellant has not brought to our attention any decision, and we think there is none, awarding such relief as is here sought upon the ground of newly discovered evidence of facts touching so exclusively the issues actually determined

by the judgment sought to be set aside, as does the claimed newly discovered evidence of facts here relied upon, however conclusive such newly discovered facts may point to the innocence of the accused. It seems almost safe to say, in the light of the decisions in this country, that, under no circumstances, can a proceeding of this nature be successfully invoked to set aside a final judgment of a court of competent jurisdiction upon the ground of newly discovered evidence relevant exclusively to the actual merits of the controversy tried and decided by the judgment, however conclusive such evidence may seem to be that the judgment was wrong upon the merits; certainly, in any event, not unless such newly discovered evidence be of such a conclusive nature as to demonstrate it to be impossible under all circumstances that the judgment was wrong upon the merits. It may be possible that if an accused person should be regularly tried and convicted of murder and thereafter it should be discovered, too late to be shown upon a motion for a new trial, that the person supposed to be murdered was alive, this remedy would be available to such an accused and convicted person, though we doubt if there is a decision to be found in the books warranting any such holding; because the question of whether or not the supposed murdered person had in fact been murdered would of necessity be of the very essence of the issue tried and determined by the judgment of conviction. In other words, as conclusive as such a showing might be of the innocence of the accused, it would, after all, be nothing but newly discovered evidence touching the very issue that was tried and determined by the judgment. It seems highly probable that in all cases of newly discovered evidence touching exclusively the merits of the issue actually tried and determined there can be no relief, under any

circumstances, at the hands of the courts. To open the door to such inquiry would be to create a condition wherein the judgments of courts would have no finality, and thus be fruitful of greater evil than would flow from very rare cases of possible injustice, which would, however, not be beyond all cure, for if injustice results from any such condition, it is readily curable, as far as human ingenuity can safely do, upon proper showing, by a resort to the pardoning power.

The situation here in question is quite unlike that involved in the famous cases of *Sanders v. State,* 85 Ind. 318, 44 Am. St. 29, and *State v. Calhoun,* 50 Kan. 523, 32 Pac. 38, 34 Am. St. 141, 18 L. R. A. 141, wherein was involved forced pleas of guilty by the accused persons by threatened mob violence. In those cases there was no trial; and this without fault of the accused. In those cases the proceeding here invoked was held to be an appropriate remedy, as has been held in many other cases in this country, the leading ones of which are collated and commented on in 2 R. C. L. 307-9; but no decision in this country, so far as we are advised, has gone so far as to permit this proceeding to be successfully invoked because of newly discovered evidence touching exclusively the merits of the issues actually tried and determined by a final judgment of a court of competent jurisdiction. We think all the decisions awarding such relief have to do with facts exclusive of the merits of the issue actually tried and determined in the case in which the judgment in question was rendered.

The judgment of the superior court is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, BRIDGES, MITCHELL, and MACKINTOSH, JJ., concur.

PEMBERTON, J. (dissenting)—I dissent. The trial court found "that the affidavits filed on behalf of said

petitioner are true.'' From this finding of fact, not appealed from, it is admitted that appellant was convicted of a crime of which he was innocent; that, at the time of his trial and sentence, he did not know that his son and two neighbor boys had committed the offense, and that it was without the fraud or negligence of appellant that these facts were not presented to the trial court. Had these facts been known at the time of the trial they would have prevented a conviction, and upon the authorities relied upon in the majority opinion they clearly authorize the issuance of the writ requested.