## GEORGE v. STATE OF INDIANA.

[No. 26,796. Filed February 11, 1937. Rehearing denied April 2, 1937.]

*Guy H. Dausman,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Caleb J. Lindsey,* Assistant Attorney-General, for the State.

HUGHES, J.—This is an appeal from the action of the Kosciusko Circuit Court in denying a petition of the appellant for a writ of error *coram nobis.* The petition for the writ states that the petitioner was, in said court, found guilty by a jury of the crime of larceny, and sentenced on May 8, 1935, to the Indiana State Prison for an indeterminate period of from one to five years; that an appeal was taken to this court, and the judgment affirmed on May 1, 1936; that some time after May 1, 1936, one Eli Slabaugh confessed the commission of the crime for which the petitioner was found guilty; that, until the confession made by Slabaugh, neither the petitioner nor his counsel had knowledge of Slabaugh's guilt; that the petitioner is innocent of the crime of which he was found guilty, and that he exercised due diligence in the preparation of his defense, but did not know of the guilt of Slabaugh; that, had the fact of Slabaugh's guilt been shown to the jury, he would not have been convicted. The petitioner asked that the judgment of conviction be set aside, and the facts be presented to another jury for trial.

The petitioner, appellant here, offered to file an affidavit of Eli Slabaugh in which he, Slabaugh, stated that, if the case of State of Indiana against Forrest George is reopened, he would testify that the said Forrest George did not take from one Grimm, the binder canvas for the larceny of which he was convicted, but that he, the affiant, without the knowledge or connivance of Forrest George, or any other person, committed the larceny for which Forrest George was convicted. The court refused permission to file said affidavit upon the objection by the state.

The state filed a demurrer to the petition of the appellant, and the third reason thereof was that the petition did not state facts sufficient to constitute a cause of action, or to entitle the defendant to the writ of error *coram nobis*. The demurrer was sustained, and the appellant appealed to this court assigning error of the lower court: (a) In refusing the appellant permission to file the affidavit of Eli Slabaugh; and (b) in sustaining the demurrer to appellant's petition.

Much has been said and written about the writ of error *coram nobis*. The writ is of common law origin, the purpose of which was to correct a judgment in the same court in which it was rendered. It is now recognized by text writers and many decisions of the highest courts of our country as forming part of the law. It is not, however, universally recognized in all the states. It is recognized by the Supreme Court of the United States. *Pickett* v. *Legerwood* (1833), 32 U. S. (7 Pet.) 144; *Bronson* v. *Schulten* (1881), 104 U. S. 410.

In the case of *Pickett* v. *Legerwood, supra,* page 147, the court said:

"The cases for error *coram vobis,* are enumerated without any material variation in all the books of practice, and rest on the authority of the sages and fathers of the law."

The granting of a new trial in cases of felonies was not authorized by the common law. The remedy in such cases where the court erred as to matters of law was the pardoning power upon the recommendation of the judges. Where there was an error of fact, the remedy, if any, was by the use of the writ of error *coram nobis*.

This state has long recognized the use of the writ, and the first case, as we are informed, in this state is that of *Sanders* v. *The State* (1882), 85 Ind. 318. In this case the defendant was forced through fear of mob violence to plead guilty to murder, and was sentenced to life imprisonment. After being in prison for a considerable length of time, he filed a petition for a writ of error *coram nobis* on the ground that his confession of guilt was brought about by fear of mob violence, and was of no effect. The writ was sustained. The nature and extent of the writ is thoroughly discussed in the above case. The court said (p. 329) :

"It is our opinion that the courts have the power to issue writs in the nature of the writ *coram nobis*, but that the writ can not be so comprehensive as at common law, for remedies are given by our statute which did not exist at common law—the motion for a new trial and the right of appeal—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact, arising upon or prior to the trial, as well as questions of law; while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system all matters of fact reviewable by appeal, or upon motion, must be presented by motion for new trial, and can not be made the grounds of an application for the writ *coram nobis*. Within this rule must fall the defense of insanity as well as all other defenses existing at the time of the commission of the crime. Within this rule, too, must fall all cases of accident and surprise, of verdicts against evidence, of *newly discovered evidence, and all like matters.*" (Our italics.)

The court also quotes with approval from Freeman on Judgments, section 94, as follows:

"The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication, made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which, without any fault or negligence of the party, was not presented to the court."

The same author in section 256, fifth edition, says:

"But this writ does not lie to correct any error in the judgment of the court, nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end to litigation."

So, the language used in section 94, *supra,* ". . . but only to enable it to recall some adjudication, made while some *fact* (our italics) existed which, if before the court . . ." clearly means some *fact* which has not already been put at issue and adjudicated.

In the Sanders case, *supra,* the defendant was charged with the murder of his wife; the homicide had aroused an intense feeling against the defendant; threats were made of lynching by a mob; the sheriff of the adjoining county came to Brazil, where the killing occurred, and warned the sheriff of Clay County of danger from an armed mob; a jury had been empanelled and a plea of "not guilty" entered; but, so great was the threatened danger that counsel, to save, as they believed, their client's life, withdrew their plea of "not guilty" and entered a plea of guilty, on which, without any evidence, the jury returned a verdict of guilty; and a life sentence was immediately pronounced upon the verdict, and the defendant was taken to prison. Afterwards, Sanders filed a petition, the prayer of which asked that the judgment entered upon his plea of guilty be vacated, and

that he be put upon his trial in due form of law. The court held that the petition was in the nature of a writ of error *coram nobis,* and the case has been cited by many courts that the petition was for a writ of error *coram nobis.* We question the theory that this was a strictly *coram nobis* case. We think it can be more properly said that the court was exercising its inherent power to see that justice was done toward the defendant upon the theory that the plea of guilty was forced from the defendant by fear of death at the hands of a mob, and, therefore, fraudulent. The court said (p. 330):

> "It is a principle of wide application, that a judgment obtained by fraud may be annulled. . . . In the case under consideration the fraud, it is true, is not that of the prosecutor, but it is such a fraud as deprived the appellant of the constitutional right to a fair trial by an impartial jury, and surely this entitles him to some relief, and under the elementary maxim, that 'there is no right without a remedy,' there must be some power to grant relief, and some remedy by which it can be secured. The practice in cases similar to this is unsettled (we have found no case exactly like it), and we think that the rule indicated by Mr. Bishop is the correct one. 'When a proceeding,' says this author, 'is entirely fraudulent, having no sound part whatever, there is no collateral or direct effect to be given it; it is as though it had not been; only a party to the fraud is not permitted to rely on this imperfection. But practically most frauds relate only to some particular in the proceeding—not vitiating, therefore, the whole.' 1 Bishop Crim. Law, section 1011. The fraud in this case extends only to the plea and subsequent proceedings, and the appellant may, therefore, be rightfully put to trial upon the original indictment."

It was further said (p. 332):

> "It is the general rule, that, in order to sustain a verdict, in a criminal case, there must be a plea. . . .
> "No jeopardy attaches until the case is ripe for trial and the trial actually entered upon; and here the case was not ripe for trial, because the plea

extorted from the appellant was null, and he was, therefore, not in legal jeopardy."

It was also said (p. 333) :

"The case comes to us upon uncontradicted evidence that the plea of guilty was not the voluntary act of the accused, but was induced by fear of violence. . . . We have decided the case upon the motion and evidence adduced in its support."

In the foregoing case, the court took the theory that the lower court did not know the *fact* that the defendant entered his plea of guilty through fear. It is said (p. 330) :

"We can not conceive it possible—possible, we mean, in a legal sense, and under legal principles— that a court, with knowledge that a plea of guilty is forced from a prisoner by fear of death, would imprison him for life without a hearing or trial."

In other words, such fact was not at issue or adjudicated by the court, and the application of Sanders brought to the knowledge of the court a *fact* which had not been put at issue, and which, if known, would have prevented a conviction.

The facts in the instant case are unlike those in the Sanders case. Here there is no lack of a proper plea and trial; there was no fraud in the trial. The issue was squarely presented as to the guilt or innocence of the defendant. Evidence was heard, and the jury returned a verdict of "guilty," and upon appeal to this court the evidence was held sufficient to sustain the verdict.

It is universally held that the writ will not lie for newly discovered evidence. *Fred Humphreys* v. *State of Washington* (1924), 129 Wash. 309, 224 Pac. 937, 33 A. L. R. 78; *Sanders* v. *State, supra.* Nor will it lie as to an issue which was adjudicated at the trial. *Kelley* v. *State* (1922), 156 Ark. 188, 246 S. W. 4; *Howard* v. *State* (1893), 58 Ark. 229, 24 S. W. 8; *The People* v. *Mooney* (1918), 178 Cal. 525, 174 Pac. 325;

*Dobbs* v. *The State* (1901), 63 Kansas 321, 65 Pac. 658; *Humphrey* v. *State, supra.*

It is clear that the appellant is proceeding on the theory that he may have a writ of error *coram nobis* granted because of newly discovered evidence. In his brief, in stating the nature of the action, he says:

> "The action is civil in its nature. It arose upon the discovery by the appellant of newly discovered evidence . . ."

In *Howard* v. *State, supra,* page 231, it is said:

> "But it will not lie to contradict or put in issue any fact that has been already adjudicated in the action. An issue of fact wrongly decided is not error in that technical sense to which the writ refers. If the error lie in the judgment itself, it must be corrected by appeal, or writ of error to a superior court."

The case of *Humphreys* v. *State, supra,* presents an almost identical state of facts as in the instant case. In that case, the defendant was convicted of stealing ten sacks of wheat; he was tried, and convicted. Later, three others made affidavits that they stole the wheat, and that the defendant, Humphreys, had nothing to do with the theft and was innocent. He filed a petition for a writ of *coram nobis* which was denied, and he appealed to the Supreme Court of the State of Washington. In denying the appeal, the court said (p. 315):

> "Now it is at once apparent that appellant's allegation that he did not commit the crime for which he was adjudged guilty cannot be considered here, because that is the very ultimate question of fact put in issue and determined by the verdict and judgment rendered against him. It is equally clear that the statements of Clifton Wilson, Joe Humphreys, and Joe Wilson, made in their affidavits, 'that Fred Humphreys had nothing to do with the taking of the wheat,' and that 'the wheat was taken without the knowledge or consent of Fred Humphreys,' cannot be considered here, because that is

also, in its last analysis, the very ultimate question of fact put in issue and determined by the verdict and judgment sought to be set aside. In other words, all of these statements of facts which these affiants would testify to upon a new trial are nothing more than new evidence touching only the very merits of what was decided by the verdict and judgment."

To the same effect is the case of *Howard* v. *State, supra.*

Applying the foregoing statements relative to the writ of *coram nobis,* what is the proper result to be reached in the instant case? The appellant was indicted, tried, found guilty, and sentenced to the state prison for stealing a binder canvas. Long after the time for filing a motion for a new trial, he filed a petition for a writ of error *coram nobis* in which he alleged that he was innocent of the crime, that one Eli Slabaugh was the guilty party, and that he had confessed to the theft; that he exercised due diligence in the preparation of his defense, but he did not and could not learn of the guilt of Slabaugh until he confessed. In support of the petition, he offered to file an affidavit of Slabaugh in which he admitted his guilt, and that appellant was not guilty and had nothing to do with the stealing of the canvas. The petition was denied by the lower court, and an appeal was taken to this court which affirmed the verdict of the lower court. He entered a plea of not guilty in the lower court, and thus put at issue the fact of his guilt or innocence. Upon the evidence introduced he was found guilty as charged, and, upon his appeal to this court, it was held that there was sufficient evidence to sustain the verdict. As a writ of *coram nobis* will not lie to contradict or put at issue any fact that has been already adjudicated in an action, we are of the opinion that the writ will not lie in the instant case. If the writ were allowable here, then the new evidence of Slabaugh would contradict and put at issue the

fact directly passed upon in the first instance. This is not the purpose of the writ. And, as said in the case of *Humphreys* v. *State, supra* (p. 318):

"... but no decision in this country, so far as we are advised, has gone so far as to permit this proceeding to be successfully invoked, because of newly discovered evidence touching exclusively the merits of the issues actually tried and determined by a final judgment of a court of competent jurisdiction."

And, as also said in the case of *Bronson* v. *Schulten, supra*, p. 416:

"It is quite clear upon the examination of many cases of the exercise of this writ of error *coram nobis* found in the reported cases in this country, and as defined in the cases in this court above-mentioned, and in England, that it does not reach to facts submitted to a jury, or found by a referee, or by the court sitting to try the issues."

In the instant case facts were submitted to the jury trying the case as to whether or not the appellant was guilty of the charge contained in the indictment, and he is now, in effect, by means of a petition for a writ of error *coram nobis*, asking that facts may be again submitted upon the same issue. If this can be done, then there would be no limit to the number of times the writ might be granted, and there would be no end to litigation. After a trial upon the issue involved, and a judgment regularly rendered, the defendant might discover or even fabricate, evidence that would have been material on the trial, and then obtain a writ of error *coram nobis*, and try the issues over again. It is clearly seen that such a practice would be intolerable, and lead to endless litigation.

In the case of *Humphreys* v. *State, supra,* the court stated (p. 317):

"It seems almost safe to say, in the light of the decisions of this country, that under no circum-

stances can a proceeding of this nature be success-fully invoked to set aside a final judgment of a court of competent jurisdiction upon the ground of newly discovered evidence relevant exclusively to the actual merits of the controversy tried and de-cided by the judgment, however conclusive such evidence may seem to be that the judgment was wrong upon the merits; certainly, in any event, not unless such newly discovered evidence be of *such a conclusive nature as to demonstrate it to be impos-sible, under all* circumstances, that the judgment was right upon the merits." (Our italics.)

The writ, under all the authorities, is now limited to those cases where some matter of fact exists which was not in issue at the trial, and, if it had been, would have prevented the rendition of the particular judgment. If, however, the newly discovered evi-dence be of such a conclusive nature as to demonstrate it to be practically impossible, under all circumstances, that the judgment was right upon the merits, then the writ of error *coram nobis* will lie. For illustration: If an accused person should be tried and convicted of mur-der, and thereafter the person supposed to be murdered appeared, then the writ would be available. Other good illustrations of the use of the writ, and given in many of the leading cases, are in cases where one of the par-ties to a judgment had died before it was rendered, or was an infant and no guardian had appeared or been appointed.

Our attention has been called to the cases of *Partlow* v. *State* (1924), 195 Ind. 164, 144 N. E. 661; *Rhodes* v. *State* (1926), 199 Ind. 183, 156 N. E. 389; *Harris & May* v. *State* (1931), 203 Ind. 505, 181 N. E. 33; and *Davis* v. *State* (1927), 200 Ind. 88, 161 N. E. 375. In the Partlow case, an original verified petition was filed in this court praying that appellant be granted leave to file his motion for a new trial in the Marion Criminal Court. It appears that Partlow was convicted solely

upon the testimony of two witnesses who later confessed that their testimony was wholly false and perjured. The court held that such evidence was a fraud upon the court and jury, and, under such circumstances, the judgment may be set aside even after the lapse of time within which a statutory motion for a new trial might have been made. On account of the alleged fraud, leave was granted appellant permission to file a motion for a new trial. In the case of *Rhodes* v. *State, supra,* we find a state of facts similar to those in the Partlow case. The court held that, due to the conduct of the officers and attorney who represented the appellant, he did not enter his plea of guilty freely and understandingly, and, in fact, the plea of guilty was entered under circumstances amounting to fraud. Under such conditions, this court ordered the judgment vacated, and permitted appellant to enter a plea of "not guilty." The case of *Harris and May, supra,* we find facts similar to those in the Partlow and Rhodes cases. The case of *Davis* v. *State, supra,* presents facts almost identical with those in the Partlow case, and the court held that, because of fraud in procuring the conviction, the writ of error *coram nobis* should be granted. Relief was granted in all of these cases because of fraud entering into the conviction and judgment. In the instant case, there is no claim of fraud, but, as frankly admitted by appellant in his brief, the petition for the writ of error *coram nobis* is on account of newly discovered evidence.

There is a provision of our statute for a motion for a new trial on the grounds of newly discovered evidence, but it must be filed within thirty days from the date of the verdict and finding. Cl. 8, §9-1903, Burns 1933.

Under our liberal rules of practice, it is only on rare occasions that it is necessary to invoke the writ of error *coram nobis,* and it is our judgment that the use of this

common law writ should not be extended so that it would materially modify our statutory rules as to motions for a new trial.

To extend the use of the writ of error *coram nobis* on account of newly discovered evidence relating to the merits of issues already tried would be, as said in *Humphreys* v. *State, supra,* "to create a condition wherein the judgments of courts would have no finality, and thus be fruitful of greater evil than would flow from very rare cases of possible injustice, which would, however, not be beyond all cure, for, if injustice results from any such condition, it is readily curable, as far as human ingenuity can safely do, upon proper showing by resort to the pardoning power."

The demurrer was properly sustained, and no harmful error was committed in refusing appellant to file the affidavit.

Judgment affirmed.

Treanor, J., dissents.

### Concurring Opinion.

Fansler, J., concurring in result—The writ of error *coram nobis* is based upon the record which is before the court, and, in passing upon the petition for the writ, consideration is given to so much of the record as is involved in the petition. While it has been said that the petition is in the nature of a civil action, in strictness, it is but a motion, addressed to the court that has the record, seeking to set aside the judgment. Where new evidence is relied upon, the office of the motion is to bring forward evidence, which, considered in the light of the evidence developed at the trial, which is also before the court, presents the question as to whether or not the judgment should be set aside. It is clear therefore that a demurrer addressed to the motion or petition has the effect only of admitting that the evidence set

out in the petition can be produced, and it should be considered, together with all of the other evidence, in determining the question. Upon this appeal, and by the briefs, only the petition is brought before this court. The petition alone presents no sufficient basis for a determination of whether the trial court abused its discretion in entering judgment denying the writ. It is true that the record, containing the evidence adduced at the trial of the case upon the merits, is in the files of this court, having been brought here by an appeal, and the court has knowledge of the facts in that record by reason of having passed upon that appeal, and, in view of all of the facts in that record and in the petition for the writ, it does not appear that there was an abuse of discretion. But the court was not required to search the record on the former appeal, since the facts there disclosed are not brought to the attention of the court by the briefs in this appeal. It must be assumed that, when the so-called demurrer to the petition was filed, the trial court treated it as admitting facts alleged in the petition, and as asserting that those facts, and the facts disclosed by the record on the trial, all being true, there was no sufficient basis in fact for setting aside the judgment, and that, in sustaining the demurrer, the court so found.

## CONCURRING OPINION.

ROLL, J.—I concur in the result reached in the majority opinion, but I reached the result upon a somewhat different basis of reasoning. It seems to be a principle recognized by all of the decisions, not only in Indiana, but in other jurisdictions, that a writ of error *coram nobis* can, under no circumstances, perform the duties and functions of a motion for new trial on the ground of newly discovered evidence. At common law, a motion for new trial in criminal cases was not recog-

nized. The Indiana Legislature in adopting the Criminal Code of Procedure provided for a motion for new trial in criminal cases and one of the reasons provided by statute is newly discovered evidence. Thirty days for filing motion for new trial was the time limit fixed by the Legislature. Newly discovered evidence under certain conditions would authorize the trial court in granting a new trial, depending upon the character and probative force of the newly discovered evidence. It seems quite clear that the prevailing opinion recognizes that if the newly discovered evidence reaches a certain degree of cogency, then the writ of error *coram nobis* will be permitted to serve the purpose and functions of a motion for new trial on the ground of newly discovered evidence, but if the evidence stated in the writ of error *coram nobis* does not reach a certain degree of probative force, then it will be denied. It is my judgment that a writ of error *coram nobis*, under no circumstance, regardless of the probative force of the evidence set out in the petition, should be granted when the granting of such writ served the purpose and accomplished the same result as the motion for new trial based upon newly discovered evidence, had such evidence been incorporated in the motion for new trial filed within the period prescribed by statute.