BARTON v. SMITH.

No. 11482.

Circuit Court of Appeals, Ninth Circuit.

May 27, 1947.

Raymond Barton, in pro. per.

Smith Troy, Atty. Gen., State of Washington, and Edward J. Lehan, Asst. Atty. Gen., for appellee.

Before GARRECHT, MATHEWS, and BONE, Circuit Judges.

GARRECHT, Circuit Judge.

On March 2, 1946, the appellant filed a petition for a writ of habeas corpus in the court below, reciting that he is illegally imprisoned under a judgment of the Superior Court of King County, Washington, dated May 4, 1938, for the term of his natural life, "for the offense of being an habitual criminal". The "proceeding" in which he was sentenced is alleged to have been had by virtue of a certain state statute, "and by virtue of certain judicial determinations of the Supreme Court of the State of Washington" that need not be outlined here.

Holding that the petitioner's allegations were "insufficient", the court below dismissed the petition. From the order of dismissal, the present appeal, in forma pauperis, was taken.

The petition avers that the state statute is "unconstitutional in that it creates a presumption that is arbitrary and is made conclusive of the rights of the person against whom it is raised"; "in that the highest court of the state candidly applies it to some and concededly would not apply it to others in similar situations"; and "in that it inflicts punishment for past conduct without benefit of trial".

It is also alleged that "the state has denied to its courts jurisdiction to redress a prohibited wrong after lapse of one year from entry of judgment". In support of this allegation, the petitioner cites White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348, and Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281.

It is difficult to understand why the petitioner should rely upon either of these cases to buttress his position. As will be seen hereinafter, White v. Ragen is a decision strongly adverse to the petitioner's contentions; and Lane v. Wilson deals with Oklahoma electoral legislation and has not the remotest connection with the law of habeas corpus.

Our own research, however, has brought to light the Washington statute upon which the petitioner probably relies. It is § 308—13, Rule 13, Rules of Practice, Remington's Revised Statutes of Washington, 1945 Supplement, which reads in part as follows: "In all cases in which it is provided by Rem.Rev.Stats., §§ 303, 464-473 [P.C. §§ 8336, 8130-8139], that the court may modify, vacate, or relieve a party from any order, judgment, decree, or other proceedings taken against him, application shall be made within one year after entry thereof by motion filed in the cause stating the grounds upon which relief is asked, and supported by the affidavit of the applicant or his attorney setting forth a concise statement of the facts or errors upon which the motion is based, and if the moving party be a defendant, the facts constituting a defense to the action or proceeding * * *." The foregoing provision will likewise be considered in its proper place hereinafter, in the discussion of the time-limits for available state remedies.

It is well settled that an applicant for a writ of habeas corpus must first exhaust state remedies before resorting to the Federal courts. In Urquhart v. Brown, 205 U.S. 179, 181-182, 27 S.Ct. 459, 460, 51 L.Ed. 760, the court said: "It is the settled doctrine of this court that, although the Circuit Courts of the United States, and the several justices and judges thereof, have authority, under existing statutes, to discharge, upon habeas corpus, one held in custody by state authority in violation of the Constitution or of any treaty or law of the United States, the court, justice, or judge has a discretion as to the time and mode in which the power so conferred shall be exerted; and that, in view of the relations existing, under our system of government, between the judicial tribun-

als of the Union and of the several states, a Federal court or a Federal judge will not ordinarily interfere by habeas corpus with the regular course of procedure under state authority, but will leave the applicant for the writ of habeas corpus to exhaust the remedies afforded by the state for determining whether he is illegally restrained of his liberty. After the highest court of the state, competent under the state law to dispose of the matter, has finally acted, the case can be brought to this court for reexamination. * * * If the applicant felt that the decision, upon habeas corpus, in the Supreme Court of the state was in violation of his rights under the Constitution or laws of the United States, he could have brought the case by writ of error directly from that court to this court."

The rationale of this salutary doctrine was further elaborated in Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406: "Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by that Constitution. Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542. In view of the dominant requirement of the Fourteenth Amendment, we are not at liberty to assume that the state has denied to its court jurisdiction to redress the prohibited wrong upon a proper showing and in an appropriate proceeding for that purpose." See also United States, ex rel. Kennedy v. Tyler, 269 U.S. 13, 17–19, 46 S.Ct. 1, 70 L.Ed. 138; Ex parte Hawk, 321 U.S. 114, 116–117, 64 S.Ct. 448, 88 L.Ed. 572; White v. Ragen, supra, 324 U.S. at page 764, 65 S.Ct. 978, 89 L.Ed. 1348.

This doctrine has been repeatedly followed by this Court. See Hall v. People of State of California, 9 Cir., 79 F.2d 132, 133; McCauley v. Goldberg, 9 Cir., 91 F.2d 1016, certiorari denied, 303 U.S. 636, 58 S.Ct. 522, 82 L.Ed. 1097; McCauley v. Mehlhorn, 9 Cir., 91 F.2d 1017; McCauley v. Palmer, 9 Cir., 91 F.2d 1017; Ex parte Melendez, 9 Cir., 98 F.2d 791, 792; Palmer v. McCauley, 9 Cir., 103 F.2d 300, 301; Kramer v. State of Nevada, 9 Cir., 122 F.2d 417, 418; Hogue v. Duffy, 9 Cir., 124 F.2d 864, 865, certiorari denied, 316 U.S. 675, 62 S.Ct. 1044, 86 L.Ed. 1749; Mason v. Smith, 9 Cir., 148 F.2d 894, 895, motion for leave to file petition for writ of certiorari denied, 325 U.S. 839, 65 S.Ct. 1407, 89 L.Ed. 1965. See also Potter v. Dowd, 7 Cir., 146 F.2d 244, 246.

Applying the foregoing rule to the facts of the instant case, we must examine the record to ascertain whether the appellant has exhausted all the remedies afforded to him under the laws of the State of Washington.

In the first place, it appears that no appeal was taken from the judgment of May 4, 1938, of which the petitioner now complains. Nor was an appeal taken from a judgment of the same court, dated May 7, 1946, correcting nunc pro tunc the earlier judgment.

Although it seems fairly well settled that in the State of Washington there can be considered in a habeas corpus proceeding only whether or not the judgment of imprisonment is void on its face, Hampson v. Smith 9 Cir., 153 F.2d 417, 418,[1] there is still another corrective writ that might have been available to the appellant.

We allude to the writ of coram nobis. The Supreme Court of Washington "has impliedly recognized coram nobis as an available writ." State v. Mason, 25 Wash. 2d 767, 768, 172 P.2d 207. The same court has held, however, that it is "the general rule, that the writ will not be issued to correct an error involving a question that has been adjudicated." State v. Armstrong, 41 Wash. 601, 603, 84 P. 584; Humphreys v. State, 129 Wash. 309, 312-315, 224 P. 937, 33 A.L.R. 78.

There is nothing in the record to indicate that the question of the constitutionality of the state statute was raised or adjudicated in the state court.

In State v. Mason, supra, which was decided on August 24, 1946, the State Supreme Court, on page 772 of 25 Wash.2d, at page 210 of 172 P.2d of its opinion, said: "We will not undertake, in this opinion, to decide whether or not the trial court had the power to issue a writ of coram nobis. A decision of such importance

---

[1] Certiorari denied, 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623.

should only be made in a case where the point is in actual controversy, and is formally briefed and earnestly argued."

█ It is evident, therefore, that in the State of Washington the precise reach of coram nobis has not yet been defined. It is not within the province of a Federal court to predict what the holding of the State Supreme Court will be when "the point is in actual controversy." The mandate of the Supreme Court of the United States is that the *petitioner*, by actual *attempt*—and not the Federal court, by prognostication or ratiocination—shall exhaust all state remedies before applying to a Federal tribunal for relief.

█ It is not enough for the petitioner to show that possibly, arguably, or even probably, the state courts offer him no legal avenue of release from his confinement. He must demonstrate, by actual effort, that he has already invoked some "recognized" remedy and that the courts of the state have declined to act. Coram nobis is, as we have seen, such a "recognized" remedy in Washington; and the appellant has not invoked it.

█ If it be argued that the time within which state remedies must be invoked has already elapsed, and that the appellant must therefore perforce seek relief in the Federal courts, the answer is threefold:

1. It is putting a premium upon neglect and inaction to permit a prisoner to sit idly by and lose his state remedies through lapse of time, and then apply for habeas corpus in a Federal court. An inmate of a state prison can thus force jurisdiction upon a Federal court, by the simple expedient of sleeping on his right to seek the aid of a state forum.

2. As far as the Supreme Court of Washington is concerned, it should be pointed out that, in at least one recent non-capital case, it has changed its rule as to the time-limit within which appeal documents must be filed. As a result of such modification, a tardy appellant was allowed to present his case. State v. Sheffield, 24 Wash.2d 984, 166 P.2d 171.

3. The Supreme Court of the United States, in a case decided a year ago, has held that the expiration of the statutory limitation for coram nobis does not of itself constitute the exhaustion of a state remedy. In Woods v. Nierstheimer, 328 U.S. 211, 216, 66 S.Ct. 996, 999, 90 L.Ed. 1177, the court said: "Nor do the denials of petitioner's applications for habeas corpus present a federal question merely because the five-year statute of limitations on the statutory substitute for the writ of error coram nobis has expired. Petitioner claims that this leaves him without any remedy in the state courts. But we do not know whether the state courts will construe the statute so as to deprive petitioner of his right to challenge a judgment rendered in violation of constitutional guarantees where his action is brought more than five years after rendition of the judgment. Nor can we at this time pass upon the suggestion that the Illinois statute so construed would itself violate due process of law in that a denial of that remedy, together with a denial of the writ of habeas corpus, would, taken together, amount to a complete deprivation of a state remedy where Constitutional rights have been denied. *We would reach that question only after a denial of the statutory substitute for the writ of error coram nobis based on the statute of limitations had been affirmed by the Supreme Court of the state.*" [Emphasis supplied.]

█ Time, however, is only one obstacle that a prisoner may have to encounter in pursuing his state remedies. Poverty is another. Of this latter excuse for non-action in the state courts, the Supreme Court, in Ex parte Elmer Davis, 318 U.S. 412, 63 S.Ct. 679, 87 L.Ed. 868 said: "Petitioner now alleges that he has filed an appeal from that [lower state] court to the Supreme Court of Indiana. He also alleges that his request that a transcript of the coram nobis proceeding be furnished free of charge, because he is a poor person, has been denied. He contends that in the absence of a transcript of the coram nobis proceeding, he is left without a remedy by appeal in the courts of Indiana. But we cannot assume that the Supreme Court of Indiana will refuse to use its process to bring before it such parts of the record as may be necessary for a decision of the case, or that, in that event, it will refuse

to enter an order finally disposing of the appeal. *Until the Supreme Court of Indiana has acted upon an application for an order finally disposing of the appeal—which, if adverse to petitioner, he could make the subject of a petition for certiorari to this Court—the remedies afforded by state appellate procedure have not been fully exhausted."* [Emphasis supplied.]

■ The appellant has not exhausted his state remedies, either by appeal or by coram nobis proceedings.

Accordingly, the order denying the petition for a writ of habeas corpus is affirmed.