[No. 36511.   Department Two.   September 26, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES E. ANGEVINE, *Appellant*.*

*Reported in 385 P. (2d) 329.

*David A. Welts* (of *Welts & Welts*), for appellant.

*Walter J. Deierlein, Jr.* and *Harry A. Follman,* for respondent.

HAMILTON, J.—This is an appeal from the dismissal of a petition for a writ of error coram nobis following a hearing on the merits. Petitioner sought by such petition to vacate a judgment and sentence entered on September 7, 1948, upon the grounds that at the time of his arraignment he was not represented by counsel.

On October 16, 1947, petitioner allegedly took a motor vehicle without permission of the owner, a felony under RCW 9.54.020.[1] A juvenile court hearing was held before the Superior Court Judge of Skagit County, Washington.[2] The hearing was attended by petitioner, his parents, and the juvenile probation officer. After holding the matter under advisement for a period of time, petitioner was released by the juvenile court to the custody of his parents.

On July 1, 1948, petitioner allegedly took another motor vehicle without permission of the owner. At that time, petitioner was 16 years of age. He was apprehended on July 8. A juvenile court hearing was held on July 29, 1948, at which time petitioner was remanded for criminal prosecution to the Superior Court of Skagit County.

On August 9, 1949, the prosecuting attorney, by information, charged the defendant with two counts of taking a motor vehicle without permission of the owner. Count 1

---

[1] "Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle, whether propelled by steam, electricity or internal combustion engine, the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle and shall be deemed guilty of a felony." RCW 9.54.020.

[2] During the pertinent times here concerned, Skagit County had only one superior court judge, Honorable Willard L. Brickey, since deceased. He, perforce, presided over all proceedings here involved.

embraced the alleged offense of October 16, 1947, and count 2 the alleged offense of July 1, 1948. Petitioner was first brought before the court on August 23, 1948. At that time, petitioner contends he sought to enter a plea of not guilty, but was advised by the judge he could not enter such a plea without counsel. The proceeding was continued, and petitioner was next brought before the court on September 2, 1948, at which time, the judgment and sentence recites, petitioner entered a plea of guilty on both counts. Petitioner was sentenced to imprisonment in the Washington State Reformatory at Monroe. Pursuant to RCW 9.95.010,[3] the court imposed a maximum term of not more than 10 years on each count, the sentences to run concurrently. The Board of Prison Terms and Paroles, pursuant to RCW 9.95.040,[4] fixed petitioner's minimum term at 27 months, which he served. The maximum term of his sentence expired in 1958.

In 1950, petitioner was convicted of auto theft in California and received a 5-year sentence. In 1958, petitioner was convicted of burglary in the second degree in Mason County, Washington, and received a maximum sentence of 15 years in the Washington State Penitentiary. At the time of his petition and hearing in the instant proceeding, petitioner was incarcerated under the Mason County conviction.

Petitioner has not been charged as an habitual criminal. The record does not indicate what, if any effect, petitioner's previous convictions have had upon his current minimum term or his eligibility for parole. No justification or excuse

---

[3]"When a person is convicted of any felony, except treason, murder in the first degree, or carnal knowledge of a child under ten years, and a new trial is not granted, the court shall sentence such person to the penitentiary, or, if the law allows and the court sees fit to exercise such discretion, to the reformatory, and shall fix the maximum term of such person's sentence only.

"The maximum term to be fixed by the court shall be the maximum provided by law for the crime of which such person was convicted, if the law provides for a maximum term. . . ." RCW 9.95.010.

[4]"Within six months after the admission of a convicted person to the penitentiary or the reformatory, the board of prison terms and paroles shall fix the duration of his confinement. . . ." RCW 9.95.040.

is affirmatively offered for the delay in seeking the relief now requested.

Petitioner, without the aid of counsel, prepared and processed the instant petition in superior court with such skill as to prompt the trial judge to comment favorably upon his intelligence and capabilities.

Upon petitioner's application, for appeal purposes, a free transcript was provided, and the court appointed counsel to perfect this appeal. Court-appointed counsel, in the best tradition of the legal profession, has conscientiously and competently waged petitioner's appeal.

Petitioner on appeal basically assigns error to the trial court's findings of fact and conclusions of law dismissing his petition.

At the outset, we are met with the challenging invitation to explore and expound upon the writ of error coram nobis and its application in the state of Washington. Our disposition of this appeal, we believe, renders this unnecessary. We must again, as in the past,[5] decline the invitation.

■ The trial court afforded petitioner a hearing on the merits. Assuming, arguendo, the availability in this state and in this case of the writ of error coram nobis, or a proceeding in the nature thereof, the burden of establishing the basis for the relief afforded thereby rests with petitioner. *United States v. Morgan*, 346 U. S. 502, 98 L. Ed. 248, 74 S. Ct. 247.

■ It is undisputed that petitioner was not represented by counsel at the time of his arraignment prior to the 1948 judgment and sentence. Concededly, under the federal and state constitutions, he was entitled to be represented by counsel, unless he intelligently and competently waived such right. *Johnson v. Zerbst*, 304 U. S. 458, 82 L. Ed. 1461,

---

[5] *State ex rel. Davis v. Superior Court*, 15 Wash. 339, 46 Pac. 399; *State v. Armstrong*, 41 Wash. 601, 84 Pac. 584; *Wilson v. State*, 46 Wash. 416, 90 Pac. 257; *Humphreys v. State*, 129 Wash. 309, 224 Pac. 937, 33 A.L.R. 78; *Pacific Tel. & Tel. Co. v. Henneford*, 199 Wash. 462, 92 P. (2d) 214; *State v. Mason*, 25 Wn. (2d) 767, 172 P. (2d) 207; *State v. Hensley*, 27 Wn. (2d) 938, 181 P. (2d) 828; *State v. Domanski*, 31 Wn. (2d) 277, 196 P. (2d) 344; *State v. Pethoud*, 53 Wn. (2d) 276, 332 P. (2d) 1092.

58 S. Ct. 1019; *Gideon v. Wainwright*, 372 U. S. 335, 9 L. Ed. (2d) 799, 83 S. Ct. 792; *In re Gensburg v. Smith*, 35 Wn. (2d) 849, 215 P. (2d) 880; *Thorne v. Callahan*, 39 Wn. (2d) 43, 234 P. (2d) 517; *In re Wilken v. Squier*, 50 Wn. (2d) 58, 309 P. (2d) 746; *In re Friedbauer v. State*, 51 Wn. (2d) 92, 316 P. (2d) 117; *State v. Dechmann*, 51 Wn. (2d) 256, 317 P. (2d) 527; *In re Wakefield v. Rhay*, 57 Wn. (2d) 168, 356 P. (2d) 596.

To prevail, upon the issues presented by his claim, petitioner was required to establish, by a fair preponderance of the evidence, that the court did not properly and adequately advise him of his rights or that he did not or could not intelligently and competently waive such rights.

As to the proceedings on August 23, 1948, petitioner, on cross-examination, testified, in part, as follows:

"Q. And at that time the Information was read to you, was it not, in open court? A. I don't recall that exactly, there was somebody there, I don't remember who it was, I don't remember whether it was the prosecuting attorney or who it was that was talking, I don't remember what took place. Q. Do you recall Mr. Youngquist being there? A. I have no memory for faces, I know I remember all that took place but no memory for faces. Q. You don't remember who was there? A. No. Q. At that time the judge asked you if you had been served with a copy of the Information, didn't he, Mr. Angevine? A. I don't remember whether he did or not. Q. You don't recall whether he asked you that or not? A. I don't believe he did. Q. At that time he asked you if your true name was James G. [E.] Angevine? A. I imagine he must have, that's normal procedure. Q. Do you remember he asked you that? A. No, I don't remember that. Q. Do you remember if he asked you whether or not you were represented by counsel? A. He asked me, he said 'How do you plead?' I said 'I plead not guilty.' Q. Let me ask you, do you remember whether or not you were asked if you were represented by counsel? A. It was fairly obviously I wasn't represented by counsel. Q. Do you remember if he asked you that? A. No, I don't remember that. Q. You don't remember that? A. No. Q. Do you remember if he asked you whether you wanted counsel? A. Well, it wouldn't have made any difference, I didn't have any money then. Q. I will ask you, do you remember whether he asked you. A. No, I do not remember

that. Q. He might have or he might not have, you don't remember? A. Given one way or the other, I would say no, he did not. . . . "

Petitioner's father testified that, although he was not present when petitioner appeared in court, he visited petitioner on several occasions between July 8 and September 2, 1948.

Petitioner offered no direct evidence bearing upon the extent of his education, training, experience, or intellectual capacity in 1948.

A court reporter was not present at any of petitioner's 1948 court appearances, it not then being the practice in Skagit County to report arraignments. The presiding judge has since passed away. The evidence available to and presented by the state was limited to the custom and practice of the presiding judge in conducting arraignments. This was presented through the testimony of the then prosecuting attorney and his chief deputy. The substance of their testimony was that the presiding judge, in 1948, customarily and regularly informed accused persons, upon arraignment, of their right to be represented by counsel and that counsel would be provided at public expense if they could not afford counsel of their own choice.

Upon conclusion of all evidence, the trial court, in his oral decision, considered, discussed, and evaluated the testimony presented, the credibility of petitioner and the state's witnesses, the lapse of time and its effect upon the proceeding and the memory of those testifying, and the present intelligence and ability of petitioner as such related to his 1948 capacities. Thereafter, the trial court entered the following findings of fact pertaining to the issues presented:

"That at said time and place the petitioner was advised that he had a right to the services of an attorney and that if he desired to have the services of an attorney in said case and prior to entering a plea therein, but was unable to secure an attorney because of lack of funds, that he would be furnished an attorney, appointed by the Court, to be paid for by public funds and without any cost to the peti-

tioner. That the said Judge did advise the defendant of all of his legal rights as one charged with a crime.

"That the petitioner was then and there fully competent to waive his right to counsel and did so waive his right to counsel knowingly and intelligently."

■ Our examination of the record satisfies us that the evidence does not preponderate against such findings. We will not disturb them. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183; *State v. Taft,* 49 Wn. (2d) 98, 297 P. (2d) 1116; *State v. McLaughlin,* 59 Wn. (2d) 865, 371 P. (2d) 55.

Petitioner contends, however, that because of his youth at the time of his arraignment he could not, and should not, as a matter of law, be deemed competent to waive counsel, when charged with a felony in superior court.

There is among the authorities differences of opinion and approach to the question of the competency of a youthful offender to waive counsel. 71 A.L.R. (2d) 1162. Most, if not all, jurisdictions, in felony cases, treat the question presented as one of fact, depending upon the individual offender's education, experience, and intelligence.

■ We, in *State v. Baforo,* 146 Wash. 312, 262 Pac. 964, and *In re Klapproth v. Squier,* 50 Wn. (2d) 675, 314 P. (2d) 430, have held that there is no constitutional or statutory provision requiring the appointment of counsel for a minor, charged with a felony in superior court, solely because he is a minor. Thus, the issue, in this jurisdiction becomes one of fact, turning upon the individual's characteristics. We are not now ready to recede from this rule.

In passing, however, we pause to note that the dissenting opinion in the *Klapproth* case, *supra,* points out the practical advisability of appointing counsel for unrepresented minors charged in superior court with felonies. In this era of crystallizing constitutional rights, the procedural wisdom of trial courts providing counsel in such instances cannot be over emphasized. Illinois, for example, has adopted a court rule requiring appropriate representation

for minors under the age of 18 years.[6] Other jurisdictions no doubt meet the problem in a similar fashion. Such a rule in this jurisdiction may not be amiss.

The order of dismissal is affirmed.

OTT, C. J., DONWORTH, FINLEY, and HUNTER, JJ., concur.

*Reported in 385 P. (2d) 305.

[6]S.H.A. (Ill.) Ch. 110, § 101.26(4), provides:

"In no case shall a plea of guilty or waiver of indictment be received or accepted from a minor under the age of 18 years, unless represented by counsel."