**VOIGT v. WEBB, Superintendent, Washington State Penitentiary.**

No. 89.

District Court, E. D. Washington, S. D.

Nov. 13, 1942.

William Voigt, Jr., pro se.

Smith Troy, Atty. Gen. of Washington, Shirley R. Marsh, Harold P. Troy, and Fred E. Lewis, Asst. Attys. Gen. of Washinton, for respondent.

SCHWELLENBACH, Judge.

The petitioner, an inmate of Washington State Penitentiary, seeks release therefrom through the process of habeas corpus. With one exception discussed later, the facts are not in dispute. They are that on March 5, 1918, by information filed in the Superior Court of the State of Washington, Cowlitz County, the petitioner was charged with the crime of murder alleged to have been committed on November 28, 1917. The information was entitled one charging murder in the first degree. The charging part failed to include any allegation that the killing was "with a premeditated design to effect the death of the person killed" as required by the statute, Rem. Rev.Stat. § 2392, or any other allegation of premeditation. After a discussion by the petitioner and the prosecuting attorney of the county, petitioner, on March 11, 1918, appeared before the Superior Court Judge of the County and entered a plea of guilty to First Degree Murder.

At no time was petitioner represented by counsel nor was he, at any time, advised as to his right to counsel. The prosecuting attorney advised the court that petitioner waived his right to counsel. Upon the entry of the plea of guilty, the judge heard a statement from the prosecuting attorney. No witnesses were called nor was a jury impaneled to determine the degree of the petitioner's guilt. The court immediately imposed upon petitioner the sentence of life imprisonment which was the maximum under the law. He has served some twenty-four and a half years (24½) of that sentence. According to respondent, the records of the penitentiary disclose that during that term the conduct of petitioner has been exemplary. The petitioner is uneducated and almost illiterate. Since 1918, petitioner has presented to the Supreme Court of the State of Washington two petitions for habeas corpus. The first was in 1924. It was denied. See In re Voight, 130 Wash. 140, 226 P. 482. The second was presented in 1941. It also was denied. See Voigt v. Mahoney, 10 Wash.2d 157, 116 P.2d 300. This petition is based upon the contention that the judgment and sentence is void because of the deprivation of the petitioner of his right to be protected by the due process of law clause of the Fourteenth Amendment to the Constitution of the United States.

The one disputed point concerns a conversation in reference to the length of time petitioner would be compelled to serve under a life sentence. Admittedly, there was such a conversation. Petitioner says it was before he was taken to court. Mr. A. H. Imus, the Prosecuting Attorney who handled the case, asserts that it was after the sentence was imposed. For the purpose of this decision, I accept the affidavit of Mr. Imus on this question.

The Constitution of the State of Washington guarantees the right of trial by jury in criminal cases. Article I, § 21. In the exercise of its power, the Legislature of the State of Washington has determined and defined the terms and conditions under which and by which that constitutional right may be waived. Since the first session of its earliest Territorial Legislature, the law of the State of Washington has provided that one charged with first degree murder could, under no circumstances, waive the constitutional guaranty. The

provisions of Section 2116, Rem.Rev.Stat., have remained untouched since 1854. It provides: "If, on the arraignment of any person, he shall plead guilty, if the offense charged be not murder, the court shall, in its discretion, hear testimony, and determine the amount and kind of punishment to be inflicted; but if the defendant plead guilty to a charge of murder, a jury shall be impaneled to hear testimony, and determine the degree of murder and the punishment therefor." Between the years 1913 and 1919, the crime of murder in the first degree was punishable only by life imprisonment. However, during all of that time, the statute, Rem.Comp.Stat. § 2167, provided that upon an indictment or information for an offense consisting of different degrees, the jury might find the accused not guilty of the degree charged and guilty of any inferior degree. The rule in reference to included crimes has been stated in State v. Gottstein, 111 Wash. 600, 191 P. 766, 767: "The correct rule is that the lesser crime must be submitted to the jury along with the greater, unless the evidence positively excludes any inference that the lesser crime was committed, and it is not incumbent upon the defendant, before such an instruction will be given, to show facts from which a jury might draw the conclusion that the lesser crime and not the greater was in fact committed." Murder in the first degree is defined as "the killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—(1) With a premeditated design to effect the death of the person killed or of another;" Rem.Rev.Stat. § 2392. Murder in the second degree is defined as "The killing of a human being, unless it is excusable or justifiable * * * when— (1) Committed with a design to effect the death of the person killed or of another, but without premeditation;" Section 2393. Manslaughter is defined, Rem.Rev.Stat. 2395: "In any case other than those specified in sections 2392, 2393 and 2394, homicide, not being excusable or justifiable, is manslaughter." Section 2394 refers to "Killing in duel".

I am not here concerned with the question of the guilt or innocence of the petitioner. "Constitutional safeguards for the protection of all who are charged with offenses are not to be disregarded in order to inflict merited punishment on some who are guilty." Ex parte Quirin et al.,

63 S.Ct. 2, 3, 87 L.Ed. ——, decided Oct. 29, 1942. The right of the State to modify or even abolish the jury trial has been recognized consistently by the Supreme Court. Walker v. Sauvinet, 92 U.S. 90, 23 L.Ed. 678; Maxwell v. Dow, 176 U.S. 581, 20 S. Ct. 448, 44 L.Ed. 597; Wagner Electric Mfg. Co. v. Lyndon, 262 U.S. 226, 232, 43 S.Ct. 589, 67 L.Ed. 961. The construction of Constitution and Statutes of the State lies exclusively within the province of the state courts. Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. The problem here is to determine whether the combination of facts and circumstances under which this petitioner was adjudged guilty and sentenced did such violence to the fundamental principles of liberty and justice, which right is at the base of all our civil and political institutions, Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270, 48 A.L.R. 1102, as to contravene the protective provision of the due process of law clause of the Federal Constitution. The question of what is and what is not due process of law, as envisaged by the Fourteenth Amendment, has been the subject of too many decisions and too much discussion to justify a review of all of the decisions and discussions in this opinion. "The line of division may seem to be wavering and broken if there is a hasty catalogue of the cases on the one side and the other." Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288. "The state is free to regulate the procedure of its courts in accordance with its own conceptions of policy, unless in so doing it 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" But "the state may not permit an accused to be hurried to conviction * * *—where the whole proceeding is but a mask—without applying corrective process. Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 67 L.Ed. 543. * * * Nor may a state, through the action of its officers, contrive a conviction through the pretense of a trial which in truth is 'but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.' Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791, 98 A. L.R. 406. And the trial equally is a mere pretense where the state authorities have contrived a conviction resting solely upon confessions obtained by violence." Brown

v. Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 464, 465, 80 L.Ed. 682. That the state's failure to afford opportunity for counsel for the defense is violative of the due process clause is no longer doubted. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527. This court must have a vigorous concern for the maintenance of the constitutional right of an accused to the the assistance of counsel. Avery v. Alabama, 308 U.S. 444, 445, 60 S.Ct. 321, 84 L.Ed. 377. The waiver of the right of counsel must be exercised "competently and intelligently," Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461. The action of prosecuting officers on behalf of the State, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That Amendment governs any action of a State, "whether through its legislature, through its courts, or through its executive or administrative officers." Carter v. Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 689, 44 L.Ed. 839; Rogers v. Alabama, 192 U.S. 226, 231, 24 S.Ct. 257, 48 L.Ed. 417; Chicago, Burlington & Quincy R. Co. v. Chicago, 166 U.S. 226, 233, 234, 17 S.Ct. 581, 41 L.Ed. 979. On the other hand, the burden of proving that he did not competently and intelligently waive his right to counsel is upon petitioner. Johnson v. Zerbst, supra, 304 U.S. page 468, 58 S.Ct. 1019, 82 L.Ed. 1461. The possibilities of prejudice must be sufficiently substantial as to take them out of the realm of gossamer shadows. Snyder v. Massachusetts, 291 U. S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575.

 Judged by these standards, there can be no question but that this petitioner was deprived of his constitutional rights. Woven into the very warp and woof of the due process philosophy is the principle of fair play. While those who dealt with Voigt may not consciously or deliberately have been unfair, nevertheless what was done and what was accomplished ran counter to every fundamental precept of English and American justice. Here was a man ignorant and almost illiterate charged with murder. Even the most primitive standards would require that he be apprised of his rights—not by the prosecutor—not by the man whose duty it was to convict him—but by some one who for the moment at least was on his side of the argument. Respondent in his brief urges that Voigt was "fairly treated because the judgment recites that the defendant was 'duly informed by the court of the nature of the information filed against him in this case.'" Anyone familiar with criminal proceedings knows that this was accomplished by reading to him the information charging that he "feloniously and with malice aforethought" shot the deceased. Does any one for a moment think that he knew what "malice aforethought" meant? No one claims to have explained to him the difference between the degrees of the crime. The prosecuting attorney no doubt honestly believed him guilty of murder in the first degree. The petitioner and the court simply accepted the prosecutor's conclusions. The court did not even ask the petitioner whether he wanted an attorney. He simply permitted the prosecutor to waive the right for him. The court heard no testimony to determine the guilt or the degree of guilt. No jury was called as required by the state statute. The court simply imposed the maximum penalty which the state law then permitted. While it is not my task to enforce the rights conferred upon the petitioner by the constitution and laws of the State, I have the duty to consider them as the measuring stick which the State established in its requirements for protective procedure. They are factors to be considered in determining whether the petitioner had his day in court. The total and utter disregard of the statutory requirements by both the prosecuting attorney and the court cannot be ignored in any attempt to ascertain the extent to which petitioner was prejudiced by the failure to accord to him the opportunity of representation by counsel. The acceptance of respondent's testimony that there was no discussion of the length of time the petitioner would serve until after he was sentenced clinches the conclusion that his waiver of counsel was not intelligent or competent. In fact, the entire affidavit of the prosecuting attorney supports this view. He asserts that petitioner was anxious to plead and that after the hearing "Voigt greeted me very cordially and told me what a relief it was to get it off his mind and have it over with, he said the suspense was something terrible." The record does not disclose whether Voight knew that five years previous the State of Washington had abolished the death penalty. If he was informed of that fact, I am at a loss to understand why he was so relieved from

748

suspense immediately after receiving the maximum sentence the law provided. If ever an accused needed a lawyer, this one did. This petitioner's plight is best described by the language used by the Supreme Court in Powell v. Alabama, 287 U.S. 45, 68, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527, when it said: "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." I am not passing on the question whether the omission of the "premeditated design" allegation in the information resulted in an actual charge of second degree murder. The precise question has never been before the State Supreme Court. Certainly, petitioner could not be expected to discover that defect. There was nothing unsubstantial about the statutory requirement for the calling of witnesses or the determination of the degree of guilt by a jury. This was precisely the type of case which the legislature contemplated when it wrote those requirements into the law.

No one reasonably can contend that there was anything shadowy about the prejudice to petitioner in this proceeding. The whole affair was a travesty. It is beyond my comprehension how it could have happened.

To hold that this petitioner's incarceration was the result of due process of law would be to strip that constitutional guaranty of its last vestige of potency.

 Respondent contends that this court is foreclosed from passing upon the questions raised by the two decisions in the State Supreme Court, In re Voight, 130 Wash. 140, 226 P. 482, and Voigt v. Mahoney, 10 Wash.2d 157, 116 P.2d 300. In support of that position, they cite Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859, where Mr. Justice Black used the language: "The judgment of the Nebraska Supreme Court is a final and authoritative answer to petitioner's contention that his imprisonment was illegal under the state's constitution or laws." In thus relying on the quoted language, respondent fails to make the distinction which Mr. Justice Black later made in Smith v. O'Grady, supra, 312 U.S. page 334, 61 S.Ct. page 574, 85 L.Ed. 859, when, after discussing the facts as disclosed by the case, he said: "If these things happened, petitioner is imprisoned under a judgment invalid because obtained in violation of procedural guaranties protected against state invasion through the Fourteenth Amendment. The state court erroneously decided that the petition stated no cause of action." Furthermore, in neither of the Voigt cases did the State Supreme Court construe the state constitution or the state statutes so as to approve of the procedure used by the Superior Court of Cowlitz County. In both of the Voigt decisions, the Supreme Court held that what was done was erroneous under the constitution and the statutes. It is true that in Voigt v. Mahoney, supra [10 Wash.2d 157, 116 P. 2d 301], the court used this language: "The judge of the superior court immediately sentenced him to life imprisonment, without satisfying the formality of calling and impaneling a jury to determine the degree of murder of which he was guilty and the punishment therefor, as required by Rem.Rev.Stat. § 2116 [P.C. § 9169]." I find it difficult to accept the statement that to ignore the constitutionally guaranteed requirement of a trial by jury should be characterized as a mere "formality." I cannot accept the doctrine that right of trial by jury, which over one hundred years ago de Tocqueville characterized as the "palladium of English liberty," had so deteriorated in our American jurisprudence that by the year 1918 the careless non-en-

forcement of it by a court should be approved on the theory that it was a mere formality. However, even after using this language, the court specifically held that the judgment and sentence was erroneous. What the State Supreme Court held in both of these cases was that, under the Washington State habeas corpus statute, relief may only be granted to a petitioner if the judgment and sentence are void. The court held that, since the Superior Court of Cowlitz County had acquired jurisdiction, the judgment was not void but was only erroneous.

This application is before this Court under the Federal statutes, 28 U.S.C. A., § 451 et seq. The standard by which I must determine this question is outlined by the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, in the following language:

"The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removed the protection of the Constitution. True, *habeas corpus* cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of *habeas corpus* cannot be used as a writ of error.' These principles, however, must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The scope of inquiry in *habeas corpus* proceedings has been broadened—not narrowed—since the adoption of the Sixth Amendment. In such a proceeding, 'it would be clearly erroneous to confine the inquiry to the proceedings and judgment of the trial court' and the petitioned court has 'power to inquire with regard to the jurisdiction of the inferior court, either in respect to the subject-matter or to the person, even if such inquiry (involves) an examination of facts outside of, but not inconsistent with, the record.' Congress has expanded the rights of a petitioner for *habeas corpus* and the ' * * * effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the act of 31 Car. II, Chap. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to "dispose of the party as law and justice require."

" 'There being no doubt of the authority of the Congress to thus liberalize the common-law procedure on *habeas corpus* in order to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him. * * *

" ' * * * it is open to the courts of the United States, upon an application for a writ of *habeas corpus* to look beyond forms and inquiry into the very substance of the matter * * *.' "

Respondent contends that I should disregard Johnson v. Zerbst, supra, for the reason that there was there involved a violation of the Sixth Amendment to the Constitution by a Federal Court. Having once determined that what occurred in the instant case was a violation of the Fourteenth Amendment, I am not only at liberty to but have a duty to accept and follow the standards laid down by the Supreme Court of the United States. The Supreme Court had earlier discussed the question as to whether a judgment or sentence resulting from proceedings conducted in violation of the Fourteenth Amendment to the Federal Constitution was merely erroneous or was, in truth, void. In Brown v. Mississippi, 297 U.S. 278, 286, 287, 56 S.Ct. 461, 465, 80 L.Ed. 682, the Supreme Court used this language: "That complaint is not of the commission of mere error, but of a wrong so fundamental that it made the whole proceeding a mere pretense of a trial and rendered the conviction and sentence wholly void. * * * 'The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure, and wherever the court is clearly satisfied that such violations exist, it will refuse to sanction such viola-

tions and will apply the corrective.' * * * The conviction and sentence were void for want of the essential elements of due process, and the proceeding thus vitiated could be challenged in any appropriate manner. Mooney v. Holohan, supra."

What was done in this case was a violation of petitioner's constitutional rights which so infected the record as to make of the hearing a mere pretense and a sham. It does violence to every basic concept of ordered government and any judgment or sentence resulting therefrom necessarily is void.

The writ prayed for will issue and become absolute and petitioner will be released from imprisonment.