[No. 31085.   Department Two.   March 13, 1950.]

*In the Matter of the Application for a Writ of Habeas Corpus
of* OTTO ARTHUR GENSBURG, *Appellant,* v. TOM SMITH,
*as Superintendent of the State Penitentiary,
Respondent.*[1]

[1]Reported in 215 P. (2d) 880.

*Otto Arthur Gensburg, pro se.*

*The Attorney General* and *John D. Blankinship, Assistant,* for respondent.

HAMLEY, J.—In November, 1947, Otto Arthur Gensburg, having been convicted of the crime of carnal knowledge, was sentenced to serve a maximum of fifteen years in Washington state penitentiary. He thereafter filed in this court an original application for a writ of *habeas corpus.* The application alleges that his imprisonment is unlawful for the reason that the judgment and sentence were illegal, being obtained in violation of constitutional rights guaranteed by the fourth, fifth, sixth and fourteenth amendments to the constitution of the United States, and by the constitution of the state of Washington. This court ordered respondent to appear before the superior court for Yakima county and show cause, if any, why the application should not be granted. Following a hearing, at which applicant was represented by counsel, the trial court denied the application, whereupon this appeal was taken.

Appellant contends that his plea of guilty was involuntary because induced by a deputy prosecuting attorney's promise of leniency. Appellant, testifying at the *habeas corpus* hearing, stated that he was a mechanic with a fourth grade education; that, upon being arrested, he asked his jailer for an attorney, but that nothing was done about it;

that he was not permitted to see members of his family prior to the arraignment three days after his arrest; that the jailers did not abuse or threaten him, but that trusties and other jail inmates told appellant that he was in danger of rough treatment; that a police officer or deputy sheriff and a deputy prosecuting attorney promised him a suspended sentence or probation if he would plead guilty; that he pleaded guilty because of such promises and because he was anxious to get out of jail and return to his family; that he did not understand the meaning of the charge "carnal knowledge" until he had pleaded guilty and been returned to jail, whereupon other inmates explained the term to him; that when he was brought back in court two days later for formal sentencing he did not ask to withdraw his plea because he was ignorant of the law; that when the court asked him if his plea was "voluntary" he did not know the meaning of that word; and that, following the conviction, appellant reminded the deputy prosecuting attorney, James V. McCabe, of his promise, and McCabe thereupon recommended to the court that appellant be given a suspended sentence. As bearing upon appellant's familiarity with court procedure, he was asked, on cross-examination, if it were not a fact that he had been convicted in South Dakota on a charge of rape. Appellant refused to answer the question.

The prosecuting witness in the carnal knowledge case also took the stand and offered to testify that her report to police and prosecuting officers had been false; that appellant did not commit the crime charged; and that she (the prosecuting witness) had circulated the falsehood because she was angry with appellant. Upon objection, the trial court refused to receive this testimony.

McCabe, testifying for respondent at the *habeas corpus* hearing, stated that he interviewed appellant shortly after the arrest; that appellant was first told the nature of the charge and was advised that he did not have to talk and was entitled to an attorney; that appellant appeared to understand the nature of the charge and told the witness all the details of the crime; that this oral statement to

McCabe corresponded to a written statement he had previously given police officers; that this oral statement was also similar to a written statement the prosecuting witness had given police officers and an oral statement she gave McCabe; that appellant told McCabe he wanted to be arraigned and enter his plea; that McCabe again told appellant he could have a lawyer, but if appellant were going to enter a plea of guilty it did not appear that a lawyer would do appellant much good; that McCabe did not promise appellant that the state would recommend a suspended sentence or probation if appellant would plead guilty; and that McCabe did not thereafter make any such recommendation to the court.

The complete transcript of the proceedings on the arraignment and formal sentencing was introduced as an exhibit in the *habeas corpus* hearing. This transcript shows that, before asking appellant to enter his plea, the court advised him that he had a right to consult an attorney and that, if he did not have funds, the court would appoint a lawyer for him. Appellant then asked the court if there was any chance of getting a suspended sentence or probation. The court replied that appellant could not ask such questions. The court asked appellant again if he desired to consult an attorney, and appellant answered "No." Appellant indicated that he thoroughly understood the meaning of the information which had just been read, and pleaded "Guilty."

The transcript of the arraignment further shows that the court then asked appellant whether his plea of guilty had been entered by virtue of any promise, threats, coercion or inducement. Appellant replied that he had been told he would not get over fifteen years and probably less, and might be paroled or receive a suspended sentence. The court asked appellant whether the plea of guilty had been entered by virtue of any promise, and the appellant replied "Promise." Appellant three times repeated that the plea had been entered by virtue of a promise on the part of someone. The court then indicated that it would refuse to receive the plea of guilty and would enter a plea of not guilty. After saying that he did not know anything about court pro-

cedure, appellant said, "I'll plead guilty and be done with it."

The transcript of the arraignment shows that the court then renewed the question as to whether the plea of guilty had been entered by virtue of any promise, or had been entered voluntarily, to which appellant replied "Voluntarily." The court asked appellant if he were sure of that answer and appellant twice answered "Yes." The deputy prosecuting attorney then gave a detailed description of how the crime was committed by appellant, and explained the witness' conversation with appellant relative to the probable sentence. This explanation was as follows:

"Mr. McCabe: In order to clear up this other thing, I will say that I told this man that the maximum punishment for this crime is not more than 15 years in the penitentiary, and I said that there was a possibility of him getting probation. However, I did not promise that I would ask for it; would not recommend it. I told him that I would recommend nothing, which I won't, and I told him that it was possible for him to get probation, seeing that he had no prior convictions of anything, but that in the usual case like this that they didn't get probation. I told him that the minimum sentence would be fixed by the Parole Board and that it would run—could run 12 months to five years. I said that undoubtedly he wouldn't get more than a 5-year minimum, I didn't think, and I doubted that he would get less than the twelve. I told him he would probably get—in giving him what information I could of the thing, I told him he would probably get eighteen to twenty months as a probable minimum, but it wouldn't be, as first offense, over five years or maybe over one. Those were not in the form of promises of anything, but just as an explanation to him. I also informed him that he didn't have to talk to us, he could talk to an attorney, and I told him the attorney would just cost the state another twenty-five or fifty dollars and I didn't see where it could do him any good. I told him that you would ask him these questions, and I rather imagine on this 'promise' business that he didn't quite understand your questions."

Appellant did not take any exception to this explanation or McCabe's description of the crime. The court then asked appellant if he had anything to say why the judgment should

not be pronounced, whereupon appellant said "No," following this with a plea for mercy. After some colloquy between the court and appellant regarding the latter's background and present circumstances, the court said, "This is one of the most heinous offenses a man could commit." Appellant replied, "I know it." The court said "Don't you think so?" Appellant replied, "Yes." The court then pronounced appellant guilty of the crime charged.

Two days later appellant again came before the court for formal sentencing. The transcript of that proceeding shows the following colloquy:

"THE COURT: Mr. Gensburg, heretofore do you recall entering a plea of guilty to the charge of carnal knowledge of a female child? THE DEFENDANT: Yes. THE COURT: And at that time the court sentenced you to the State Penitentiary at Walla Walla, Washington, for not more than fifteen years? THE DEFENDANT: Yes. THE COURT: I think you stated at the time that your plea of guilty was entered voluntarily? THE DEFENDANT: Yes. THE COURT: I am now signing the formal judgment. MR. McCABE: Mr. Gensburg just told me he wanted to ask you a question and I asked him what he wanted to ask you, and he wanted to ask you if he could get a suspended sentence or be on parole, and I just told him you had just sentenced him to fifteen years and it was too late."

On the basis of the evidence adduced at the *habeas corpus* hearing, the trial court found that appellant was fully cognizant of the nature of the crime with which he was charged, and had freely, voluntarily, and of his own free will entered a plea of guilty to the offense charged. In *habeas corpus* proceedings, as in other types of cases, the findings of the trial court will not be disturbed unless the evidence clearly preponderates against those findings. *In re Thompson v. Smith*, 33 Wn. (2d) 142, 204 P. (2d) 525.

In our view, the evidence as summarized above amply supports the findings of the trial court. While appellant now asserts that his plea of guilty was induced by a *promise* of leniency, this is not supported by the transcript of the arraignment and formal sentencing, when read as a whole. It is further controverted by the present testimony

of the deputy prosecuting attorney. The transcript shows that, while appellant first stated at the arraignment that his plea had been induced by a promise, he retracted that statement and several times assured the court that the plea was given voluntarily. The full details regarding the crime charged, and the deputy prosecuting attorney's explanation of his conversation with appellant relative to the probable sentence to be imposed, as stated to the court in the presence of appellant, went unchallenged. The transcript also shows that, at the time of the arraignment, the trial court went to unusual lengths to advise appellant of his constitutional rights and to make certain that the plea was voluntarily entered.

Appellant's contention that the trial court erred in failing to find that the judgment and sentence under which he is detained is void because based upon an involuntary plea of guilty, obtained by promises or inducements, is accordingly without merit.

Appellant also contends that he was deprived of the assistance of counsel, contrary to the provisions of the Federal and state constitutions.

■ The sixth amendment of the Federal constitution provides, among other things, that in all criminal prosecutions the accused "shall enjoy the right . . . to have the assistance of counsel for his defense." This amendment, however, applies only to trials in Federal courts. *Howard v. Kentucky,* 200 U. S. 164, 50 L. Ed. 421, 26 S. Ct. 189.

■ The due process clause of the fourteenth amendment of the Federal constitution applies to state court proceedings. *Hebert v. Louisiana,* 272 U. S. 312, 71 L. Ed. 270, 47 S. Ct. 103, 48 A. L. R. 1102. That clause does not, as such, incorporate and make applicable to such proceedings, the specific guarantees found in the sixth amendment. *Palko v. Connecticut,* 302 U. S. 319, 82 L. Ed. 288, 58 S. Ct. 149. Nevertheless, a denial by a state of the right to have the assistance of counsel may, in certain circumstances, or in connection with other elements, operate, in a given case, to deprive the accused person of due process of law in violation of the fourteenth amendment. *Betts v. Brady,* 316 U. S. 455,

86 L. Ed. 1595, 62 S. Ct. 1252; *Gibbs v. Burke,* 337 U. S. 773, 780, 93 L. Ed. 1343, 69 S. Ct. 1247. In the latter case the United States supreme court stated the test to be applied, as follows:

"Our decisions have been that where the ignorance, youth, or other incapacity of the defendant made a trial without counsel unfair, the defendant is deprived of his liberty contrary to the Fourteenth Amendment. [Footnote: *Uveges v. Pennsylvania,* 335 U. S. 437, 441, and cases there cited.] Counsel necessary for his adequate defense would be lacking."

■ The right of accused persons to appear and defend by counsel is expressly guaranteed by Art. I, § 22, of the state constitution, as amended by the tenth amendment thereof. In furtherance of this constitutional guarantee, a statutory duty is placed upon the trial court to advise accused persons of their right to counsel, and to appoint such counsel at public expense in proper cases. Rem. Rev. Stat., § 2095 [P.P.C. § 121-37]; Rem. Supp. 1941, § 2305 [P.P.C. § 120-1]. It is not here contended that the trial court failed to perform this duty, nor would the record support such a contention. It is asserted, rather, that appellant was so illiterate and unfamiliar with court proceedings that his purported waiver of the constitutional right to counsel was of no effect.

■ An accused person may waive his constitutional right to counsel, but this power of waiver, to be effective, must be exercised "competently and intelligently." *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A. L. R. 357; *Voigt v. Webb,* 47 F. Supp. 743. In the *Johnson* case it was further held that one who asserts that the right to counsel was not competently and intelligently waived, has the burden of proof to establish that claim.

■ The facts with respect to the advice given appellant regarding his right to counsel, and his waiver of counsel, are recounted above in connection with the discussion of appellant's first contention. The trial court in the *habeas corpus* proceeding found that appellant had been advised of his right to have counsel appointed for him, and had com-

petently and intelligently waived counsel. The record fully supports the findings of the trial. court. We conclude that, in the criminal proceedings, there was full recognition of appellant's Federal and state constitutional rights, and compliance with all duties imposed by statute with respect to the right to the assistance of counsel. See *State v. Cowan*, 25 Wn. (2d) 341, 170 P. (2d) 653.

Appellant has also set out other assignments of error in his brief, but has submitted no argument in support thereof. We must accordingly regard such assignments as having been abandoned by appellant. *Gephart v. Stout*, 11 Wn. (2d) 184, 118 P. (2d) 801; *McCoy v. Courtney*, 30 Wn. (2d) 125, 190 P. (2d) 732. We therefore are not called upon to consider these assignments.

The order of the trial court is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HILL, JJ., concur.

---

May 1, 1950. Petition for rehearing denied.