[No. 32152. Department Two. August 7, 1952.]

*In the Matter of the Application of* JULIAN TUGAS *for a Writ of Habeas Corpus.*[1]

[1]Reported in 246 P. (2d) 851.

*J. P. Tonkoff* (of *Tonkoff & Holst*) and *Blaine Hopp, Jr.,* for appellant.

*Ronald R. Hull,* for respondent.

FINLEY, J.—This is an appeal from a judgment dismissing the application of Julian Tugas for a writ of *habeas corpus.* Mr. Tugas was tried for murder and, by special verdict of the jury, was acquitted by reason of insanity. The jury further found that, although the insanity did not exist at the time of the trial, there was such a likelihood of a relapse or recurrence of the insane or mentally irresponsible condition that Mr. Tugas was not a safe person to be at large. He was therefore committed to the ward for the criminally insane at the state penitentiary. The judgment of the superior court was affirmed by us in *State v. Tugas,* 37 Wn. (2d) 236, 222 P. (2d) 817.

Subsequently, in a proceeding under Rem. Rev. Stat., § 6970, RCW 10.76.070, Mr. Tugas petitioned the superior court for Yakima county for a discharge from custody. We granted a writ of prohibition preventing the superior court from proceeding with that matter (*State v. Tugas,* 39 Wn. (2d) 241, 234 P. (2d) 1082), and held that the action did not lie because Mr. Tugas could not bring his cause within the terms of Rem. Rev. Stat., § 6970; but that, in absence of the statutory judicial remedy, *habeas corpus* is necessarily the proper procedure. The present action was commenced pursuant to that decision.

The issue involved is whether petitioner is free from the danger of a relapse or a recurrence of mental unsoundness, and whether he is a safe person to be at large. The burden of proof is upon him. The trial court found that Mr. Tugas had not sustained this burden and consequently denied the writ. Error is assigned to the court's finding of fact No. VI, which reads:

"That the petitioner is not now a safe person to be at large nor is the petitioner free from danger of recurrence or relapse of his mentally irresponsible condition."

In *habeas corpus* proceedings, as in certain other types of cases, the findings of the trial court will not be disturbed unless the evidence clearly preponderates against them. *In re Gensburg v. Smith,* 35 Wn. (2d) 849, 215 P. (2d) 880; *In re Thompson v. Smith,* 33 Wn. (2d) 142, 204 P. (2d) 525.

The seven lay witnesses of petitioner, inmates and employees of the penitentiary, testified that Mr. Tugas was normal, sociable, and got along well with others; that he is a model prisoner, shows no antagonistic or aggressive tendencies; and that, in their opinion, he is rather a timid sort of person and a safe one to be at large. These witnesses emphasized the fact that when Mr. Tugas arrived at the penitentiary, he was in a nervous and depressed condition, but that such condition no longer exists. All of the witnesses did admit, however, that their contacts with Mr. Tugas were infrequent, and that for the most part, their conversations with him usually related only to routine matters and that they knew nothing of the facts in his case or of his private thoughts.

The testimony of the experts summoned by petitioner conflicted in many ways with that of the state's experts. All are highly qualified medical men, specializing in psychiatry. Dr. Stoltzheize and Dr. Wetzler testified that Mr. Tugas was safe to be at large. Upon cross-examination, the former testified that the actions of Mr. Tugas were substantially normal at the time he shot and killed Tabbada, but that he had acted in a fear or panic state, and there is a possibility that Tugas would react similarly if confronted with similar circumstances or conditions.

Dr. Wetzler testified that, in his opinion, Tugas was an introvert, and that, at the time of the killing, Tugas had gone into a panic state, or an extreme state of fear, which behavior was abnormal.

Drs. Hood and Levy, testifying for the state, stated that petitioner was not a safe person to be at large. In Dr. Hood's opinion, Mr. Tugas' panic state, at the time of the killing, was a form of mental irresponsibility; that he was emotionally unstable, easily frightened, and, if circumstances

similar to those preceding the killing should arise again, Mr. Tugas might react as he did before. Dr. Levy testified that he thought Tugas lacked insight, was unstable, and, at the time of the killing, was in a panic state. Dr. Levy further stated that, in general, a person who has once broken down in such a situation will tend to break down more quickly thereafter in similar situations, and that there is a possibility this would happen to Mr. Tugas; that despite Tugas' improvement since his incarceration, his basic emotional pattern had not changed.

The trial judge considered the testimony of these witnesses carefully. He indicated in his memorandum opinion that he placed a great deal of faith in the views expressed by Dr. Levy; that he had worked with Dr. Levy on similar cases in the past, and was assured that the doctor is absolutely disinterested. He also pointed out that, in the opinion of Dr. Levy, it is not now safe for Mr. Tugas to be at large, but that Mr. Tugas is making good progress and in all probability petitioner will not have to be committed for the rest of his life, nor necessarily for a great number of years. The judge's conclusion was that Mr. Tugas is not free from danger of recurrence or relapse, and hence it is not safe for him to be at large.

We do not believe that the evidence clearly preponderates against the findings made by the trial court; therefore, the judgment of the trial court is affirmed.

SCHWELLENBACH, C. J., HILL, HAMLEY, and OLSON, JJ., concur.

---

October 31, 1952. Petition for rehearing denied.