IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31165-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES GREGORY CASTILLO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — James Gregory Castillo fled the state in 1998 after raping a woman. In 2010, he was arrested and put on trial. A jury convicted him and the trial court sentenced him to life in prison under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570. We reject his argument that his constitutional right to a speedy trial was violated. We also reject his contentions that the court erred by originally denying his request to represent himself, in excluding hearsay testimony from the victim's husband, and in failing to require the jury to find the existence of his prior conviction. We affirm.

FACTS

On June 30, 1998, Mr. Castillo raped a female acquaintance. She immediately reported the rape. That same day, law enforcement obtained and executed an arrest warrant for Mr. Castillo at his home. He was not present.

Acting on information from a confidential informant, law enforcement obtained an arrest warrant for Mr. Castillo at his sister's home in California. The second warrant was executed just days after the first. Again, Mr. Castillo was not present.

At this point, law enforcement started soliciting tips from the public. Sheriff's deputies sent Mr. Castillo's information out to local print and television news media. In 2000, 2001, and 2002, deputies included Mr. Castillo's information in the local Crime Stoppers bulletin.

In late December 2007, Mr. Castillo appeared again trying to enter the United States at a border crossing from Mexico. The Border Patrol found that Mr. Castillo had an outstanding warrant for the rape and contacted law enforcement in Washington to get instructions. The Border Patrol released him upon learning that the warrant was not extraditable.

Law enforcement finally arrested Mr. Castillo in Las Vegas in 2010. The record does not provide the circumstances leading up to this arrest other than to show that he was living in Las Vegas at the time.

Prior to trial, Mr. Castillo sought to have the charge dismissed because the delayed apprehension violated his constitutional right to a speedy trial. He argued that law enforcement should have caught him sooner because he had been living openly in Las Vegas throughout the intervening years. To support his claim, Mr. Castillo provided documents showing that he had been living in Las Vegas since 2009. The trial court denied the motion.

On the same day that counsel argued the speedy trial motion, Mr. Castillo made multiple attempts to dismiss counsel and represent himself. During the morning court session on January 13, 2012, Mr. Castillo filed a detailed motion requesting to proceed pro se that explained why he could not get along with counsel and why he felt comfortable and competent to represent himself. The court did not engage in a colloquy with Mr. Castillo, but instead denied the motion because he was not ready to argue the speedy trial motion later that day in place of counsel. However, the court indicated that the self-representation motion could be revisited later that day if the motion to dismiss was denied.

A visiting judge heard—and denied—the speedy trial motion that afternoon. Mr. Castillo then renewed his motion to represent himself. The court engaged in a colloquy with Mr. Castillo, who unequivocally requested to represent himself. Nonetheless, the court denied the motion because it did not feel comfortable with his legal skills.

3

A week later, Mr. Castillo renewed his motion to represent himself. The motion was heard by a third judge at Mr. Castillo's next court hearing on January 31. After a lengthy colloquy, the court granted self-representation. Mr. Castillo then represented himself at trial.

Mr. Castillo's first trial ended in a hung jury. Prior to the second trial, Mr. Castillo again reargued the speedy trial claim. He alleged that he was unaware of the pending charge and that Border Patrol had detained him without explaining why. The trial court again denied the motion to dismiss.

During the second trial, Mr. Castillo sought to call the victim's husband to testify. The court excluded the witness because the only evidence that Mr. Castillo sought to elicit was inadmissible hearsay. The second trial ended in a conviction. The court sentenced him to life in prison as a persistent offender. Mr. Castillo thereafter timely appealed to this court.

## ANALYSIS

This appeal presents constitutional challenges raising speedy trial and self-representation claims, as well as a hearsay issue and a sentencing-related claim.[1] We will address those challenges in the noted order.

---

[1] Mr. Castillo also presents several additional issues in his pro se statement of additional grounds. We have reviewed those arguments and concluded they are without merit. We will not further address them.

4

*Speedy Trial*

The initial argument we consider is whether Mr. Castillo's speedy trial rights under the Sixth Amendment and article I, section 22 of the Washington Constitution were violated by the lengthy time period between the offense and the trial. We conclude that his argument fails under the facts of this case.

The rights provided by the two constitutions are equivalent. *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009). We review de novo an allegation that these rights have been violated. *Id.* at 280. Because some delay is both necessary and inevitable, the appellant bears the burden of demonstrating that the delay between the initial accusation and the trial was unreasonable and created a "presumptively prejudicial" delay. *Id.* at 283. Once this showing is made, courts must consider several nonexclusive factors in order to determine whether the appellant's constitutional speedy trial rights were violated. *Id.* These factors include the length and reason for the delay, whether the defendant has asserted his right, and the ways in which the delay caused prejudice. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). None of the *Barker* factors are either sufficient or necessary to demonstrate a constitutional violation. *Iniguez*, 167 Wn.2d at 283.

There was a delay of nearly a dozen years between the offense and the arraignment. This time period is more than sufficient to meet the defendant's initial

5

burden. *Id.* at 291-92. It is thus necessary to turn to the four *Barker* factors to determine if the constitutional guarantee was violated.

The first factor is the length of the delay. Specifically, the concern is the difference between the time necessary to prepare for trial and the time within which the case is actually tried. This was a moderately complex case due to the offense involved, but still did not need a large amount of pretrial preparation given the limited number of witnesses. Thus, the lengthy delay is a factor that weighs in Mr. Castillo's favor.

The second factor is the reason for the delay; this factor looks at the comparative contributions of the parties to the delay. *Id.* at 294. Here, the delay is largely attributable to Mr. Castillo. His immediate flight caused the initial—and very lengthy—delay. He did not surface again until over nine years after the rape, and it was another two and half years before he was arrested. Mr. Castillo contends that his case is factually similar to the decision in *Doggett v. United States*, 505 U.S. 647, 120 L. Ed. 2d 520, 112 S. Ct. 2686, (1992).

In *Doggett*, there was an eight and a half year delay between indictment and arrest. 505 U.S. at 648. Shortly after obtaining the indictment, Drug Enforcement Administrative (DEA) officers sought to arrest Doggett at his parents' house. He was not there, and his mother told officers that he had left for Colombia four days earlier. *Id.* at 649. A year and a half after the indictment, the DEA learned that Doggett had been arrested in Panama and was facing charges. Believing that formal extradition would be

6

futile, the DEA instead asked Panama informally to expel Doggett to the U.S. once his Panamanian charges had been dealt with. Panama agreed, but freed Doggett anyway— letting him return to Colombia. *Id.* at 649.

At the post-indictment two and a half year mark, Doggett return to the United States, through customs, unhindered. He then lived openly in the United States for another six years, during which he got married, finished college, and held a steady job as a computer operations manager. *Id.* at 649-50. Eight and a half years post-indictment, U.S. Marshals discovered his location after running "a simple credit check on several thousand people subject to outstanding arrest warrants." *Id.* at 650.

The United States Supreme Court found a violation of the Sixth Amendment, concluding that since Mr. Doggett did not know that he had been indicted and the government failed to do anything after he left Panama, the lengthy delay violated the constitution. *Id.* at 656. Given some factual similarities between that case and his, Mr. Castillo understandably relies upon *Doggett* here, although we believe important distinctions exist between the two cases.

Critical in *Doggett* was the fact that Mr. Doggett was unaware of the indictment and, thus, did not intentionally cause the delay by going to Columbia. The trial court understandably reached a different conclusion here. Mr. Castillo fled Yakima within hours of the attack and was just ahead of law enforcement, leaving many of his belongings and his wife behind. The police also appear to have just missed him in

California before Mr. Castillo fled to Mexico and the trail went cold. The trial court was able to conclude, unlike in *Doggett*, that Mr. Castillo's flight was the reason for the delay in bringing him to trial.

Mr. Castillo also argues that the detention by the Border Patrol at the end of 2007 put Yakima County on notice that he was in the country and renewed its duty to find him. On this record, it is unclear when Yakima County learned about the detention. It is clear that the Border Patrol released Mr. Castillo after learning the warrant was not extraditable, but it is unclear whether state or federal authorities made that determination. The record does show that Yakima was in contact with the Border Patrol shortly after the stop and continued to be until Mr. Castillo was located in Las Vegas in 2009.[2] But even if the State of Washington was alerted to Mr. Castillo's presence in the country in December 2007, it only marginally aids Mr. Castillo. This court has previously determined that there is no duty to extradite and did not hold a similar failure against the State for speedy trial purposes in *State v. Monson*, 84 Wn. App. 703, 710-12, 929 P.2d 1186 (1997). It also does not appear that the Border Patrol was able to supply any information on where to find Mr. Castillo after he was released.

Although the December 2007 border stop was a missed opportunity to bring Mr. Castillo back sooner, it does not appear that government negligence contributed to the

---

[2] Perhaps coincidentally, the documentation provided by Mr. Castillo to show that he was living openly in Las Vegas also is all from 2009.

8

delay after that period. On balance, we believe that because Mr. Castillo's flight caused the delay and is primarily responsible for its length, we conclude that this factor favors the State.

The third factor is whether or not Mr. Castillo asserted his right to a speedy trial. *Iniguez*, 167 Wn.2d at 294-95. He did not. While he sought dismissal of the case once he was in Yakima, he never asserted his right to a speedy trial prior to that time. During the period that it took to bring this case to trial after his return, Mr. Castillo's repeated efforts to change counsel led to further delay that cannot be attributed to the State.

Although he subsequently argued pro se that he was never aware of the arrest warrant, including after his detention by the Border Patrol, the trial court was not required to accept his assertion. In view of his flight and given that Mr. Castillo was living with his wife[3] in Nevada when arrested, it is quite reasonable to infer that he knew he was facing charges. This fact, too, takes this case outside of *Doggett*. While Mr. Doggett's ignorance of the pending charge prevented him from asserting his right to a speedy trial under the constitution, Mr. Castillo's refusal to act despite his apparent knowledge leads to the opposite conclusion. This factor, too, favors the State rather than Mr. Castillo.

The final factor is whether the defendant was prejudiced by the delay. *Iniguez*, 167 Wn.2d at 295. There was no prejudice here. Mr. Castillo remained out of custody

---

[3] According to defense counsel, she was present when officers initially tried to serve the arrest warrant on the day of the rape.

9

the entire period in which the police sought him. There is no evidence that his ability to present a defense was hindered by the passage of time. He was able to present his defense despite the lengthy delay. There also was no evidence presented suggesting that he worried about the pending charge or that it otherwise impacted his life.[4] This factor, too, favors the State.

On balance, the *Barker* factors favor the State. Only the lengthy delay factor favors Mr. Castillo. The other factors, in contrast, favored the State. Given that Mr. Castillo's rapid flight from Yakima County triggered the whole situation, it is understandable that his right to a speedy trial was not violated.

*Self-Representation*

Mr. Castillo successfully argues that his right to self-representation was violated when the visiting judge denied his request because of concerns about his legal skills. However, this error did not amount to structural error because the next trial judge corrected the error before there were any other proceedings. He also received the remedy that would have been required if there had been structural error. For both reasons, this claim does not succeed.

The Sixth Amendment guarantees the right to counsel in criminal cases. *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963). Washington's state

---

[4] Indeed, if his pro se assertion were accepted, Mr. Castillo was blissfully unaware of the charge until his 2010 arrest.

10

constitution likewise guarantees the right to counsel in all criminal cases. *Gensburg v. Smith*, 35 Wn.2d 849, 856, 215 P.2d 880 (1950). Both constitutions recognize that the right to counsel may be waived and that a defendant can engage in self-representation. *Faretta v. Cal.*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing WASH. CONST. art. I, § 22). The right to self-representation is implicit in the Sixth Amendment, but explicit in article I, section 22. Deprivation of this right is considered to be structural error. *Neder v. United States*, 527 U.S. 1, 8, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999) (listing instances of structural error).

In order to exercise the right to self-representation, the criminal defendant must knowingly and intelligently waive the right to counsel after advice about the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835. A thorough colloquy on the record is the preferred method of ensuring an intelligent waiver of the right to counsel. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

While courts must carefully consider the waiver of the right to counsel, an improper rejection of the right to self-representation requires reversal. *Madsen*, 168 Wn.2d at 503. Courts should engage in a presumption against waiver of counsel. *Id*. at 504. However, there are limits on a court's ability to act in the defendant's best interests.

> This presumption does not give a court carte blanche to deny a motion to proceed pro se. The grounds that allow a court to deny a defendant the right to self-representation are limited to a finding that the

11

> defendant's request is equivocal, untimely, involuntary, or made without a general understanding of the consequences. Such a finding must be based on some identifiable fact; the presumption in [*In re Det. of*]*Turay*[,139 Wn.2d 379, 986 P.2d 790 (1999)] does not go so far as to eliminate the need for any basis for denying a motion for pro se status. Were it otherwise, the presumption could make the right itself illusory.

*Id.* at 504-05. The defendant's "skill and judgment" is not a basis for rejecting a request for self-representation.[5] *State v. Hahn*, 106 Wn.2d 885, 890 n.2, 726 P.2d 25 (1986).

Because Mr. Castillo was not prepared to undertake argument of the pending motion to dismiss, the trial judge who heard the request on the morning of January 13 properly denied the request as it would lead to further delay in considering the pending motion. However, the visiting judge erred in rejecting the request that afternoon following the denial of the motion to dismiss. Mr. Castillo's lack of skill was not a basis for rejecting the request. *Id.*

However, the error did not amount to structural error in the context of this case because it did not deprive Mr. Castillo of any opportunity to represent himself. Promptly after the motion was denied, he again filed a pro se motion to allow self-representation. At the very next court appearance the trial judge heard and granted the request. Mr. Castillo suffered no loss because of the visiting judge's erroneous denial of his request.

---

[5] Only where mental illness leaves the defendant without mental capacity to try the case by himself does the constitution permit the government to override the desire for self-representation. *Indiana v. Edwards*, 554 U.S. 164, 171 L. Ed. 2d 345, 128 S. Ct. 2379 (2008).

12

There were no intervening court appearances and no lost opportunity for Mr. Castillo to represent himself. Under these circumstances, finding structural error would be the equivalent of ruling that a trial judge could not successfully grant reconsideration of an erroneous rejection of a *Faretta* waiver. Once the error occurred, even immediate correction would be too late. Mr. Castillo presents no authority that suggests the error itself, apart from the consequent denial of an opportunity to proceed pro se, constitutes structural error. Rather, it is the denial of the opportunity that results in a new trial. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless.")

Moreover, even if the error itself were uncorrectable, it would be of no moment under the facts of this case. After the erroneous ruling by the visiting judge (and its correction by a different judge on January 31), the case proceeded to the first trial with Mr. Castillo representing himself. That action ended in a mistrial and a second trial at which Mr. Castillo again represented himself. He thus received the remedy that he would have received if the first trial had been conducted by counsel in violation of the *Faretta* waiver. The error prior to the first trial did not somehow impact the second trial that

13

proceeded under a valid *Faretta* waiver. If we were to grant the requested remedy here it would necessarily apply to each and every subsequent trial of this case.

There was no structural error because no opportunity to exercise the right of self-representation was lost to Mr. Castillo as a result of the visiting judge's error. The mistrial of the first case also granted the same remedy that the visiting judge's error would have required—a second trial. For both reasons, his *Faretta* argument is without merit.

*Hearsay Testimony*

The only trial issue presented is an argument that the trial judge erroneously excluded testimony from the victim's husband. Since the offer of proof showed the husband had no admissible evidence, the trial court did not err.

The principles governing review of evidence-related arguments are well-settled. ER 401 provides in part that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Subject to limitations imposed by other rules or constitutional principles, relevant evidence is admissible. ER 402. A trial judge's decision to admit or exclude evidence under these provisions is reviewed for abuse of discretion. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

14

No. 31165-1-III
*State v. Castillo*

In some circumstances the constitution requires that state evidentiary rules give way to the constitutional right to present a defense. *E.g.*, *State v. Jones*, 168 Wn.2d 713, 719-21, 230 P.3d 576 (2010). There is, however, no constitutional right to present irrelevant evidence. *Id.* at 720. If a court excludes relevant evidence to the point where it effectively prevents presentation of the defense, the constitutional right is violated. *Id.* at 721. Mr. Castillo argues this case presents one of those situations. We disagree.

At trial, Mr. Castillo sought to call the victim's husband in order to attempt to prove that Mr. Castillo was having an affair with the victim. On appeal, Mr. Castillo argues that this evidence was relevant to impeach the victim's testimony by showing her bias against him.[6] Neither theory has any basis in the record. The fundamental problem is that no one asked the victim if she was having an affair with the defendant nor did the defendant testify that he was in a relationship with her. The husband did not witness the incident underlying the rape charge and was in no position to opine whether or not that incident was consensual. Any statement by the victim would constitute hearsay if repeated by her husband. Finally, there was nothing to impeach since the victim did not testify about an alleged affair. For all of these reasons, the argument fails.

---

[6] A party cannot present an evidentiary argument on appeal that is different than the argument made to the trial court. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). For this reason, too, the argument fails.

15

There was no abuse of discretion in excluding the irrelevant testimony from the victim's husband.

*Sentencing Arguments*

Mr. Castillo also challenges his persistent offender sentence on the basis of arguments that the Washington Supreme Court has previously rejected. We need discuss these claims only in a summary fashion because this court is bound by decisions of the Washington State Supreme Court. *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984).

Mr. Castillo first contends that his equal protection rights were violated because our statutes provide that the judge rather than the jury must find the existence of a prior sexual offense. We have previously rejected this argument. *State v. Williams*, 156 Wn. App. 482, 496-98, 234 P.3d 1174, *review denied*, 170 Wn.2d 1011 (2010).

Mr. Castillo next argues that his constitutional right to a jury trial and his right to due process both were violated by not referring the existence of his prior conviction to the jury. The Washington State Supreme Court rejected the due process argument in *State v. Manussier*, 129 Wn.2d 652, 682-84, 921 P.2d 473 (1996), and reaffirmed that decision in *State v. Wheeler*, 145 Wn.2d 116, 123-24, 34 P.3d 799 (2001) (holding that the United States Supreme Court's opinion in *Apprendi* did not affect *Manussier* and other similar cases).

No. 31165-1-III
*State v. Castillo*

The Washington State Supreme Court also rejected the Sixth Amendment/article I, section 22, jury trial argument in *State v. Smith*, 150 Wn.2d 135, 147-55, 75 P.3d 934 (2003). The Washington State Supreme Court reaffirmed these holdings in *State v. Thiefault*, 160 Wn.2d 409, 418-20, 158 P.3d 580 (2007). This court is not in a position to revisit those claims. *Gore*, 101 Wn.2d at 486-87.

The conviction and sentence are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.

17